457 A.2d 502

**NOVELTY KNITTING MILLS, INC., Appellant,**

v.

**Jack SISKIND and Francis Siskind t/a Bernette Textile Company, and Bernette Knitwear Company, Jack Siskind, Buddy Siskind, Bernette Textile Company, Bernette Knitwear Corp., Appellees.**

Supreme Court of Pennsylvania.

Argued Jan. 24, 1983.

Decided March 16, 1983.

434

E. Daniel Larkin, III, David Berger, Philadelphia, for appellant.

Leonard Dubin, Philadelphia, for appellees.

Before ROBERTS, C.J., and NIX, FLAHERTY, McDER-MOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

McDERMOTT, Justice.

This is an appeal of a Superior Court order affirming a decision of the Court of Common Pleas of Philadelphia County which denied appellant, Novelty Knitting Mills, Inc. (hereinafter "Novelty") relief from a judgment following a non jury trial. We now affirm, 287 Pa.Super. 603, 428 A.2d 260.[1]

The parties to this litigation were engaged in the business of manufacturing and selling sweaters in accordance with the terms of an informal arrangement into which they entered in 1968. Under the agreement, Novelty was the manufacturer and appellee, Bernette Knitwear Company,

1. Jurisdiction is vested in this Court pursuant to the act of July 9, 1976, P.L. 586, No. 142 § 2, 42 Pa.C.S.A. § 724(a).

(hereinafter "Bernette") functioned as the contractor. A course of business was established wherein Bernette would design and order the sweaters and Novelty, after agreement on price and quantity was reached, would produce the sweaters.

The companies operated independently of each other. Novelty's plant remained available to fill the potential orders of other companies making the relationship continuous as the occasion arose or markets were available.

It is undisputed that in November 1969, Bernette purchased five tons of yarn and requested permission to store the purchase on Novelty's premises. Anxious to maintain good business relations, Novelty granted the request.

In February 1970, Novelty learned of Bernette's intention to remove the yarn from Novelty's plant in order to have it processed by another sweater manufacturer. In hopes of preventing the removal, Novelty filed an action in assumpsit against Bernette, relying on the doctrine of equitable estoppel. Both the trial and Superior Courts found in favor of Bernette resulting in the instant appeal.

Novelty contends that by removing the yarn to another manufacturer, Bernette ignored Novelty's legitimate expectation of an order to process the yarn into sweaters. In anticipation of such an order Novelty asserts that it maintained certain essential personnel and took other measures at considerable expense. As a consequence, Novelty claims, asserting the doctrine of equitable estoppel, that Bernette's failure to place the expected order plunged it into bankruptcy.

Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity. *See*

*generally, In re. Tallarico's Estate,* 425 Pa. 280, 228 A.2d 736 (1967); *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 204 A.2d 473 (1964); *Comm. ex rel. Gonzalez v. Andreas,* 245 Pa.Super. 307, 369 A.2d 416 (1976).

The two essential elements of equitable estoppel are inducement and justifiable reliance on that inducement. The inducement may be words or conduct and the acts that are induced may be by commission or forbearance provided that a change in condition results causing disadvantage to the one induced. *See generally, Funds for Business Growth, Inc. v. Woodland Marble and Tile Company,* 443 Pa. 281, 278 A.2d 922 (1971); *Ham v. Gouge,* 214 Pa.Super. 423, 257 A.2d 650 (1969).

The elements of equitable estoppel and the burden of proof required to support such a claim are well stated in *Blofsen v. Cutaiar,* 460 Pa. 411, 333 A.2d 841 (1975).

Equitable estoppel applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken ... the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, over a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct or statements.

\*     \*     \*     \*     \*     \*

It is well established ... that the burden rests on the party asserting the estoppel to establish such estoppel by clear, precise and unequivocal evidence.

*Blofsen,* 460 Pa. at 417, 333 A.2d at 844.

Appellants failed to convince the courts below that they met these requirements. We are satisfied after reviewing the record that there is no basis upon which to disturb these findings. Nothing in the record supports the contention that Novelty established the existence of a course of conduct or representations justifying its reasonable expectation that

Bernette would place an order directing Novelty to process the stored five tons of yarn.

■ The record reveals Mr. Gripp, Novelty's president at the time, believed that agreeing to store the yarn would generate "a good business relationship". When asked whether he expected Bernette to order the five tons of yarn to be fabricated into sweaters, Mr. Gripp replied that he regarded this only as "a possibility". Not only did he state that no specific order was guaranteed but he admitted that no oral agreement had been reached as to any specific garment with respect to style or price. When the trial judge asked Mr. Gripp whether agreements on style and price were prerequisites to a commitment, he responded in the affirmative. Thus, the record does not indicate that Bernette induced Novelty nor does it support Novelty's claim that it justifiably relied on any such inducement.

Novelty's assertion that its bankruptcy was caused by Bernette's failure to place the order in question is also belied by the facts contained in the record. When asked whether he did not accept other work in anticipation of Bernette's order, Mr. Gripp answered emphatically in the negative. He also indicated that anticipation of Bernette's order was not the only reason that "key help" was retained. This work force was also needed so that Novelty would remain prepared to meet other potential contracts.

The burden of proof under *Blofsen* requires clear, precise and unequivocal evidence to support the elements of equitable estoppel. We must agree with the courts below that Novelty has failed to meet this burden. Rather than showing that Bernette induced Novelty to rely on a promise never delivered, our review of the record shows that Novelty's claims amount to little more than speculation to support an illusory promise. This is particularly apparent when viewing Novelty's assertion that its bankruptcy was caused by Bernette's failure to order the five tons of yarn to be fabricated into sweaters. Mr. Gripp identified the deteriora-

tion of the market and outdated equipment among the causes of his company's decline.[2]

Thus, it was well known to Novelty that its uncompetitive position and the general condition of the clothing business in the 1968–69 period were factors in creating the financial instability from which Novelty suffered. The claim that Bernette's order would have prevented Novelty's bankruptcy is, therefore, pure conjecture and, as such, it fails to meet the unequivocal evidence standard of *Blofsen*.

■ The flexibility of the doctrine of equitable estoppel does not allow it to be imposed where the essential elements of inducement and reliance are supported solely by speculation. See *Blofsen*. See also, *Bearoff v. Bearoff Bros. Inc.*, 458 Pa. 494, 327 A.2d 72 (1974); *Sabino v. Junio*, 441 Pa. 222, 272 A.2d 508 (1971). Here, Novelty has proven only that Bernette delivered five tons of yarn to Novelty's place of business with absolutely no promise, oral, written or implied by course of business, or conduct that an order for the manufacture of sweaters was imminent. Hence, there is no basis upon which to disturb the findings of fact or conclusions of law established in the tribunals below which rejected Novelty's invocation of the doctrine of equitable estoppel.[3]

Accordingly, the order of the Superior Court is affirmed.

LARSEN, J., did not participate in the consideration or decision of this matter.

2. When questioned about whether he expected to receive an order from Bernette to fabricate the yarn in question into sweaters, Mr. Gripp made the following observation:

He (Mr. Siskind of Bernette) told me he didn't know what to manufacture and if you will recall it was either '68 or '69 the market was very bad as far as knit goods and Novelty Knitting Mills had obsolete old equipment, thirty, forty, fifty, eighty years old, and it was hard for them to compete with the manufacturers of '68 and '69 who had modern equipment that produce different type garments than Novelty and produce more of a quantity at a less price.

Notes of Testimony, 1/10/77 at 93.

3. The opinion of the court below is not, contrary to appellant's assertions, in conflict with the Superior Court's earlier decision in

*Straup v. Times Herald,* 283 Pa.Super. 58, 423 A.2d 713 (1980). In that case, a course of conduct between the parties had existed from 1927 and was evidenced by at least two written contracts. Thus, unlike the instant matter, there was clear and unambiguous evidence supporting the claim of equitable estoppel which prevailed in *Straup.*