In re Jung H. IM t/a Gateaux
Bakery & Shop, debtor.

No. 00–19295 (WHG).

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 12, 2000.

**438**

David S. Kim, Law Office of David S. Kim, The Pavilion, Jenkintown, PA, for debtor.

Brian H. Smith, Jaffe, Friedman, A Professional Corporation, Elkins Park, PA, for creditor.

## OPINION

WILLIAM H. GINDIN, Bankruptcy Judge.

### PROCEDURAL HISTORY

This dispute arises from a motion filed by More Shopping Center, L.P. (hereinafter "movant") for relief from the automatic stay provided for in 11 U.S.C. § 362(a). For the reasons set forth below, this court will deny the relief sought by movant based upon the doctrine of equitable estoppel. In addition, this court will deny debtor's cross-motion for turnover of the funds it deposited into the Prothonotary Office of the Court of Common Pleas of Montgomery County.

The court conducted a hearing on this matter on September 14, 2000, and reserved decision. Counsel for both parties submitted supplemental memoranda.

This court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(G). To the extent that this determination constitutes a "non-core" determination, this opinion shall constitute a report and recommendation pursuant to 28 U.S.C. § 157(c)(1).

### FACTS

In November of 1998, Jung H. Im (hereinafter "debtor") entered in an agreement with Young Sik Choi (hereinafter "Choi"), the owner of More Shopping Center, L.P. (hereinafter the "Shopping Center"), the movant in the instant matter. Debtor agreed to assist Choi in the construction of the Shopping Center. His services were to be without pay from February, 1997 until December, 1998. Debtor contributed $60,000 in improvements to the property. It was debtor's understanding that in return for its services, it would be granted the right to lease commercial space at the Shopping Center for a period of five (5) years with an option to renew for an additional five (5) year term. Although debtor asserts that these terms were reduced to writing, it has not provided this court with a written lease agreement or any writing showing the terms. Movant, on the other hand, asserts that it merely agreed to an at will lease and that no terms were reduced to writing.

On January 14, 2000, movant provided debtor with a notice to "quit and surrender" the leased premises as debtor had failed to tender required monthly payments. The notice gave debtor ten (10) days to vacate the premises. On February 4, 2000, movant filed suit against debtor in the District Court of Montgomery County. The District Court entered judgment in favor of movant. Debtor appealed the District Court's decision to the Court of Common Pleas of Montgomery County on March 15, 2000. While the appeal was pending, debtor deposited rental monies into the Prothonotary Office. In June, 2000, movant received the monies held by the Prothonotary Office. Subsequently, on July 26, 2000, debtor filed a Chapter 13 bankruptcy petition. In its reorganization plan, debtor assumed the asserted five year lease agreement. On August 8, 2000, movant filed a motion for relief from the automatic stay imposed by 11 U.S.C. § 362(a). Debtor timely answered the mo-

tion, and included as part of its answer a "Cross Motion for Turnover of Funds Deposited in the Court of Common Pleas of Montgomery."

### DISCUSSION

Debtor presents three arguments in its opposition to movant's motion for relief from the automatic stay. This court finds debtor's first two arguments to be without merit. Debtor, however, will prevail on its third argument. First, debtor asserts that the agreement at issue amounts to a year to year tenancy under the Statute of Frauds. Second, debtor argues that the lease was not properly terminated prior to the filing of the bankruptcy petition. Third, debtor alleges that movant is barred by the doctrine of equitable estoppel from denying the existence of the five year lease. For the reasons set forth below, movant's motion seeking relief from the automatic stay is denied.

■ First, this court concludes that since debtor was unable to produce an executed written lease agreement, the transaction at issue is governed by the Statute of Frauds. The Pennsylvania Landlord and Tenant Act provides in pertinent part:

Real property, including any personal property thereon, may be leased for a term of more than three years by a landlord to a tenant or by their respective agents lawfully authorized in writing. Any such lease must be in writing and signed by the parties making or creating same, otherwise it shall have the force and effect of a lease at will only and shall not be given any greater force or effect in law or equity, notwithstanding any consideration therefore, unless the tenancy has continued for more than one year and the landlord and tenant have recognized its rightful existence by claiming and admitting liability for the rent, in which case the tenancy shall become one from year to year. 68 P.S. § 250.202 (1999).

Under Pennsylvania law, leases of a duration greater than three years must be in writing. A lease agreement that has not been reduced to writing will be deemed either (a) an at will tenancy or (b) a year to year tenancy. Indeed the Supreme Court of Pennsylvania has declared that section 250.202 of the Landlord and Tenant Act

does not render unenforceable in their entirety leases which exceed three years in duration; its effect rather is to give violating leases the force and effect of leases at will, unless the parties recognize its existence by paying and accepting the rent for longer than one year, in which case, the tenancy becomes one from year to year. *Blumer v. Dorfman,* 447 Pa. 131, 289 A.2d 463, 468–69 (1972).

As such, this court finds that the lease constitutes an at will tenancy. Debtor has failed to make more than twelve rental payments to movant. Indeed, from January, 1999, to December, 1999, debtor merely tendered nine (9) payments to movant. As a matter of law the nine payments are insufficient to create a year to year tenant pursuant to § 250.202.

■ Second, this court holds that movant properly terminated the lease prior to the commencement of the bankruptcy case. Section 365 of the Bankruptcy Code states that "the trustee may not assume or assign any executory contract or unexpired lease of the debtor, . . . if such lease is of nonresidential real property and has been terminated under applicable non bankruptcy law." 11 U.S.C. § 365(c)(3). On January 14, 2000, movant delivered to debtor a notice to "quit and surrender" the leased property. The notice both made a demand for the overdue rent and granted debtor ten (10) days to vacate the leased space. Under Pennsylvania law, "[i]n case of failure of the tenant, upon demand, to satisfy any rent reserved and due, the notice shall specify that the tenant shall remove within ten days from the date of the service thereof." 68 P.S. § 250.501. Movant complied with the statutory requirements.

■ Third, notwithstanding the above determinations, this court finds that movant is barred by the doctrine of equitable

estoppel from asserting that the lease constitutes an at will tenancy. As stated above, debtor asserts that movant's promise of the five year lease induced debtor to make a substantial investment into the Shopping Center. The Pennsylvania Supreme Court has opined that the doctrine of equitable estoppel applies "where one by his words or conduct willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." *Ervin v. Pittsburgh*, 339 Pa. 241, 14 A.2d 297, 300 (1940); *See also Novelty Knitting Mills v. Siskind*, 500 Pa. 432, 457 A.2d 502, 503 (1983) (The doctrine of equitable estoppel serves to enforce "an informal promise implied by one's words, deeds, or representations which leads another to rely justifiably thereon to his own injury or detriment"). The burden rests upon the party asserting estoppel to prove such estoppel by unequivocal evidence. *Siskind*, 457 A.2d at 503.

In support of its argument, debtor relies upon *Ridley Park Shopping Center, Inc. v. Sun Ray Drug Co.*, 407 Pa. 230, 180 A.2d 1 (1962). *Ridley* involves a written lease which was subsequently modified by an oral agreement. Specifically, the tenant originally contracted to lease a total of 60,000 square feet. In exchange for the rental space, the tenant was obligated to construct a building on the 60,000 square foot tract. *Id.* at 231, 180 A.2d 1. Before construction was initiated the tenant expressed to the landlord its desire to lease an additional 30,000 square feet of space contiguous to that specified in the written lease. Subsequently, the tenant constructed a building that covered approximately 100,000 square feet. *Id.* The landlord brought suit against the tenant alleging that the tenant "was occupying that portion of the premises in excess of the 60,000 square feet covered by the written leases." *Id.* The landlord sought possession of that part of the leased space not covered by the written documents. The court declined to interpose the Statute of Frauds. The court noted: "Tenant assumed exclusive possession and expended a large sum of money in effecting permanent improvements on the land without the semblance of a complaint or objection from the [landlord]. Under such circumstances, the Statute of Frauds may not now be asserted." *Id.* at 233, 180 A.2d 1.

Debtor, like the tenant in *Ridley*, made substantial improvements upon movant's real estate in exchange for a lease agreement. According to debtor, it "expended sums in excess of sixty thousand dollars ($60,000.00) to make substantial improvements to the Premises, including attaching fixtures thereto." (Debtor's Brief at 3). As such, this court holds that movant is estopped from denying the existence of the five-year lease. Debtor has successfully convinced this court that it invested $60,000 into the property relying upon movant's promise of a five-year commercial lease.

**The Money Deposited into the Prothonotary Office**

Debtor asserts that the landlord must turnover the funds transferred to the landlord from the Prothonotary Office as (1) the rental payments constitute property of debtor's estate; and (2) the monies are recoverable from the landlord as a preferential transfer pursuant to 11 U.S.C. § 547(b). For the reasons set forth below, this court finds that the rental monies are not recoverable as a preferential transfer because debtor has failed to satisfy the test set forth in § 547(b).

■ As stated above, when debtor appealed the judgment entered by the District Court of Montgomery County, debtor was required to make its rental payments to the Prothonotary Office. Such payments were handed over to movant in June, 2000. Pursuant to 11 U.S.C. § 542(a) of the Bankruptcy Code, debtor may recover "property that the trustee may use, sell, or lease" in the administration of the bankruptcy case. Debtor is correct in its assertion that the rental monies qualify as property of its bankruptcy

estate [1].  *See Mason v. Benjamin Banneker Plaza, Inc. (In re Mason)*, 69 B.R. 876 (Bankr.E.D.Pa.1987) (holding that a debtor tenant may avoid, as a preferential transfer, payments made to its landlord during an appeal from an adverse tenant-landlord ruling).  Thus, the critical issue for this court to determine is whether or not the transfer is avoidable under § 547(b).

■ Section 547 of the Bankruptcy Code provides in pertinent part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;  or

(B) between ninety days and one year before the date of the filing of the petition, is such creditor at the time of such transfer was an insider;  and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The preferential transfer test set forth in § 547(b) is conjunctive;  debtor must satisfy the requirements of each prong in order to invoke the avoiding power.  This court finds that debtor has failed to satisfy the fifth factor.  Indeed, the transfer has not bestowed upon the landlord more than it would have received in a chapter 7 case.  In the chapter 7 proceeding, if debtor sought to assume the unexpired lease in default, § 365 mandates that "at the time of assumption of such contract or lease," debtor must "cure[ ], or provide[ ] adequate assurance that the trustee will promptly cure, such default."  11 U.S.C. § 365(b)(1)(A).  The landlord has not received more than what is owed to him due to debtor's default under the lease.  As such, § 547(b) precludes debtor from recovering the monies deposited into the Prothonotary Office.

## CONCLUSION

For all of the above reasons, this court hereby denies movant's motion for relief from the automatic stay imposed by 11 U.S.C. § 362(a).  This court also denies debtor's cross-motion for turnover of the funds deposited with the Prothonotary Office.

Counsel for movant shall submit an appropriate order within ten (10) days.

---

1.  A bankruptcy estate is comprises of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).