# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Eleven Eleven Pennsylvania, LLC, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 651 M.D. 2016 |
| | : | Argued: June 5, 2017 |
| Commonwealth of Pennsylvania, State | : | |
| Board of Cosmetology; Ian J. Harlow, | : | |
| Commissioner of Professional and | : | |
| Occupational Affairs, in his official | : | |
| capacity; and Pedro A. Cortes, Secretary | : | |
| of the Commonwealth of Pennsylvania, | : | |
| in his official capacity, | : | |
| Respondents | : | |

BEFORE:　　HONORABLE ROBERT SIMPSON, Judge
　　　　　　HONORABLE ANNE E. COVEY, Judge (P.)
　　　　　　HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**　　　　　　**FILED: August 14, 2017**

Before us is Eleven Eleven Pennsylvania, LLC's (Petitioner) application for summary relief, seeking a declaration that the State Board of Cosmetology's (Board) regulation requiring a lavatory within a salon's square footage, 49 Pa. Code §7.79 (Lavatory Regulation), is preempted by the Pennsylvania Construction Code Act (Construction Code Act).[1]　Petitioner also seeks to permanently enjoin the Board, the Commissioner of Professional and Occupational Affairs, Ian J. Harlow, and the Secretary of the Commonwealth, Pedro A. Cortes (collectively, Respondents) from enforcing the Lavatory Regulation.　Upon consideration, we grant the application for summary relief.

---

[1] Act of November 10, 1999, P.L. 491, as amended, 35 P.S. §§7210.101-.1103.

# I. Background

The Beauty Culture Law (Law)[2] established the Board and its powers. Pursuant to Section 11 of the Law, the Board may prescribe regulations. 63 P.S. §517. The Board promulgated regulations regarding the physical requirements of a salon, including the Lavatory Regulation. Pursuant to the Lavatory Regulation, salons must have "adequate lavatories on the premises." 49 Pa. Code §7.79. In 2009, the Board amended the Lavatory Regulation to clarify that it interprets the phrase "on the premises" to mean "within the square footage of the salon." Id.

Petitioner designs and develops salons for which it submits applications to the Board. As such, Petitioner is subject to the Board's regulations.

Petitioner employs a specific business model whereby it invests in retail space and then constructs within the space multiple, separate salons, each consisting of one to four chairs (Eleven Eleven Facilities). Petitioner licenses use of each salon space within its Eleven Eleven Facilities to independent cosmetologist licensees who operate each salon area independently of Eleven Eleven and each other. In this manner, cosmetologists are business owners instead of salon employees.

Eleven Eleven Facilities include lavatories for the shared use by all of the salons located in each Eleven Eleven Facility, accessed through a common corridor. Thus, none of the Eleven Eleven Facilities have a lavatory within the square footage of an individual salon as the Lavatory Regulation requires.

---

[2] Act of May 3, 1933, P.L. 242, as amended, 63 P.S. §§507-527.

2

Petitioner leased space for Eleven Eleven Facilities in three locations in Allegheny County; each location houses more than 10 salons. Petitioner applied for licenses for each salon within the Eleven Eleven Facilities. Licensure depends on an inspection by the Board and a successful physical inspection for compliance with Board regulations. Eleven Eleven Facilities comply with the Board's salon regulations, with the exception of the Lavatory Regulation. As a result, Petitioner sought variances from the Lavatory Regulation.

Petitioner filed a petition for review in our original jurisdiction challenging the Lavatory Regulation, and seeking declaratory and injunctive relief. Specifically, Petitioner contended the Lavatory Regulation is expressly preempted by Section 104(d)(1) of the Construction Code Act, rendering it invalid and unenforceable.

As discussed in more detail below, Section 104(d)(1) provides that construction regulations adopted by a board or state agency are preempted by regulations promulgated under the Construction Code Act. 35 P.S. §7210.104(d)(1). The Department of Labor and Industry (Labor & Industry) adopted such regulations, known as the Uniform Construction Code. Labor & Industry's regulations incorporate the 2009 International Building Code (IBC) pertaining to plumbing systems, and the 2015 IBC exceptions to "employee and public toilet facilities," and "(i) Section 304.1 [of the 2009 IBC] concerning 'Business Group B' uses and occupancies …." 34 Pa. Code §403.21(a)(1).

3

Petitioner asserts it complies with the Uniform Construction Code regarding lavatory construction. Based on express preemption in the Construction Code Act, Petitioner contends the Board is precluded from enforcing the Lavatory Regulation.[3]

Petitioner filed its application for summary relief now before us, and supporting brief. To its brief, it appended a declaration of David Raduziner (Raduziner Declaration) describing its business model, and included the standard floor plan for multiple-salon construction in Eleven Eleven Facilities. At the same time, with Respondents' consent, Petitioner amended its petition for review.

The amended petition identified the harm resulting from enforcement as being subjected to contradictory requirements and additional compliance costs. Since filing of the initial petition for review, the Board granted Petitioner's requested variances.

Respondents answered the application for summary relief, contesting the ripeness of Petitioner's challenge, the lack of undisputed material facts and the right to relief. Respondents also filed an answer and new matter to the amended petition for review, to which Petitioner replied on June 5, 2017 (the day of argument).

_____

[3] With its petition, Petitioner filed an application for a preliminary injunction. However, after a partial hearing, Petitioner withdrew its application.

4

Appended to their brief in opposition to summary relief, Respondents submitted a declaration of Christopher Butcher, a 20-year employee of the Board (Butcher Declaration). Butcher and his staff process salon applications, and "until about a year ago … processed requests for variances from the [L]avatory [Regulation] or space requirements for salons." Butcher Declaration at ¶3. He explained that work in salons exposes patrons to chemicals that pose a risk of reactions including "scalp irritation, itching, hair breakage, hair loss, redness, swelling of the face," and may be severe so as to warrant an emergency room visit. Id. at ¶7. He confirmed the safety purposes underlying the Lavatory Regulation, and the reasons for granting or denying variances from the Lavatory Regulation.

The parties filed a joint application for expedited consideration, which the Court granted. After briefing and oral argument, the matter is ready for disposition.

## II. Discussion

Petitioner argues summary relief is appropriate because the Lavatory Regulation is expressly preempted by the Construction Code Act and by the Uniform Construction Code, which occupy the field of installation and use of plumbing equipment for business occupancies, expressly including beauty salons. It contends enforcement of the Lavatory Regulation imposes conflicting standards that disrupt the uniformity of the Uniform Construction Code.

Respondents dispute that the Lavatory Regulation conflicts with the Uniform Construction Code so as to trigger preemption. Rather, the Lavatory

5

Regulation imposes a licensure criterion based on the safety risks inherent to salon operations. They argue Petitioner did not establish a clear right to relief or irreparable harm. Respondents also raise disputes of material fact precluding summary relief, including the public interest served by the Lavatory Regulation. In addition, Respondents contend there is no real controversy because Petitioner may apply for variances from the Lavatory Regulation.

Petitioner presents a question of law, whether the Lavatory Regulation is preempted by Section 104(d)(1) of the Construction Code Act because the Uniform Construction Code regulates the number and location of lavatories based on the classification of occupancy of a structure or portion covered by an occupancy permit.

## A. Legal Standards

Applications for summary relief are governed by Pa. R.A.P. 1532(b). It provides: "At any time after the filing of a petition for review in an … original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Id. "An application for summary relief may be granted if a party's right to judgment is clear and no material issues of fact are in dispute." Leach v. Turzai, 118 A.3d 1271, 1277 n.5 (Pa. Cmwlth. 2015) (en banc), aff'd, 141 A.3d 426 (Pa. 2016) (citing Hosp. & Healthsystem Ass'n of Pa. v. Com., 77 A.3d 587 (Pa. 2013)). "In ruling on application[s] for summary relief, we must view the evidence of record in the light most favorable to the non-moving party and enter judgment only if there is no genuine issue as to any material facts and the right to

judgment is clear as a matter of law." <u>Markham v. Wolf</u>, 147 A.3d 1259, 1270 (Pa. Cmwlth. 2016) (citation omitted).

The purpose of the Declaratory Judgments Act "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and [it] is to be liberally construed and administered." 42 Pa. C.S. §7541. Declaratory judgment as to the rights, status or legal relationships is appropriate only where an actual controversy exists. <u>McCord v. Pennsylvanians for Union Reform</u>, 136 A.3d 1055 (Pa. Cmwlth. 2016). "An actual controversy exists when litigation is both imminent and inevitable and the declaration sought will practically help to end the controversy between the parties." <u>Id.</u> at 1061 (quotation omitted). "Granting or denying a petition for a declaratory judgment is committed to the sound discretion of a court of original jurisdiction." <u>GTECH Corp. v. Dep't of Revenue</u>, 965 A.2d 1276, 1285 (Pa. Cmwlth. 2009).

In order to establish a claim for a permanent injunction, a party must establish its clear right to relief. <u>Buffalo Twp. v. Jones</u>, 813 A.2d 659 (Pa. 2002). However, unlike a claim for a preliminary injunction, the party need not establish either irreparable harm or immediate relief, and a court "may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law." <u>Id.</u> at 663. A party must also show greater injury will result from refusing rather than granting the relief requested. <u>Unified Sportsmen of Pa. v. Pa. Game Comm'n</u>, 950 A.2d 1120 (Pa. Cmwlth. 2008). Violation of a statutory scheme justifies injunctive relief. <u>Grine v. Centre Cnty.</u>, 138 A.3d 88 (Pa. Cmwlth. 2016) (<u>en</u> <u>banc</u>).

## B. Merits

### 1. Ripeness

First, we address Respondents' ripeness challenge. Respondents argue there is no imminent or actual controversy because Petitioner did not suffer any harm. Respondents also contend any harm from delays or expense of compliance may be remedied with damages.

Petitioner argues there is an imminent threat to its business-model because its floorplans for salons do not comply with the Lavatory Regulation. Petitioner will need to file variances from the Lavatory Regulation, which may not be granted, thus causing uncertainty. It contends threatened enforcement of an unlawful regulation constitutes irreparable harm.

To date, the Board granted the variances Petitioner requested from the Lavatory Regulation. However, the Board's waiver of the Lavatory Regulation by allowing a variance does not eliminate the controversy. Arsenal Coal Co. v. Dep't of Envtl. Res., 477 A.2d 1333 (Pa. 1984).

This case presents an actual controversy in that Petitioner seeks to construct uses regulated by the Board. The Board enforces the Lavatory Regulation against Petitioner, and it has the discretion to deny licensure to Petitioner's salons in the future based on non-compliance. The Board also has the discretion to deny a variance from the Lavatory Regulation. That the Board granted Petitioner's pending salon applications did not remove the harm. Id.

Moreover, resolving this case would not constitute an advisory opinion because it would resolve a controversy between the parties. McCord. As a result, we reject Respondents' ripeness argument and reach the merits.

## 2. Clear Right- Preemption

Petitioner's claims for declaratory judgment and permanent injunction are predicated on its alleged clear right to invalidate the Lavatory Regulation. Express preemption is the legal basis Petitioner offers for invalidity.

Preemption may be express within a statute, or implied if the statute is silent on supercession. Skepton v. Borough of Northampton, 486 A.2d 1022 (Pa. Cmwlth. 1985). The courts recognize the Construction Code Act contains an express preemption clause in Section 104(d)(1). Indian Rocks Prop. Owners Ass'n, Inc. of Ledgedale v. Glatfelter, 28 A.3d 1261, 1265 (Pa. 2011); DRB, Inc. v. Dep't of Labor & Indus., 853 A.2d 8, 12 (Pa. Cmwlth. 2004) ("The [Uniform Construction] Code regulations preempt construction standards of any existing statute, local ordinance or regulation promulgated or adopted by a board, department, commission, State agency or local government.").

The Construction Code Act applies generally "to the construction, alteration, repair and occupancy of all buildings in this Commonwealth." 35 P.S. §7210.104(a) (emphasis added). Pursuant to Section 301(a)(1) of the Construction Code Act, Labor & Industry adopted the Uniform Construction Code,[4] 35 P.S.

___

[4] The International Code Council (ICC) developed a set of single codes, or International Codes that supplanted those set by Building Officials & Code Administrators International, (BOCA). See DRB, Inc. v. Dep't of Labor & Indus., 853 A.2d 8, 19 n.18 (Pa. Cmwlth. 2004).

9

§7210.301(a)(1), thereby incorporating by reference various model codes. See 34 Pa. Code §403.21; see also Chapters 401, 403 and 405 of Title 34.

Relevant here, Section 104(d) of the Construction Code Act provides in pertinent part:

> (d) **Preemption**.-
>
> (1) Except as otherwise provided in this act, <u>construction standards provided by</u> any statute or local ordinance or <u>regulation promulgated or adopted by a board</u>, department, commission, agency <u>of State government</u> or agency of local government <u>shall continue in effect only until the effective date of regulations promulgated under this act, at which time they shall be preempted by regulations promulgated under this act and deemed thereafter to be rescinded</u>.
>
> \*\*\*
>
> (3) <u>Nothing in this act shall preempt any licensure or Federal certification requirements for health care facilities, intermediate care facilities for the mentally retarded or for persons with related conditions or State institutions</u>. This paragraph includes building and life safety code standards set forth in applicable regulations.
>
> (4) <u>Nothing in this act shall limit the ability of the Department of Aging, the Department of Health or the Department of Public Welfare [now Human Services] to promulgate or enforce regulations which exceed the requirements of this act</u>.

35 P.S. §7210.104(d) (emphasis added; subsection (2) relating to homeowners' associations or community association regulations omitted). The Lavatory Regulation is a regulation adopted by a board of State government.

10

Notably, there are exceptions to the express preemption. Under Section 104(d)(3), certain Federal and State licensure and certification requirements for facilities caring for mentally ill or disabled persons or persons with related conditions are not subject to preemption. 35 P.S. §7210.103 (definition of "State institutions"), §7210.104(d)(3); see also Section 901 of the Human Services Code,[5] 62 P.S. §901 (definition of "State institutions"). Importantly, the Board's licensing requirements for beauty salons are not included in this exception to preemption.

Also, under Section 104(d)(4), regulations of the Department of Aging, the Department of Health, or what is now the Department of Human Services, that exceed the requirements of the Construction Code Act are not subject to preemption. Significantly, regulations by the Board which exceed the requirements of the Construction Code Act are not saved from preemption.

Under the preemption clause, the Uniform Construction Code preempts any construction standards that are different from those in the Uniform Construction Code. Flanders v. Ford City Borough, 986 A.2d 964, 970 (Pa. Cmwlth. 2009). Thus, "[w]ith limited exceptions, the Uniform Construction Code preempts and rescinds construction standards established in any Pennsylvania statute, local ordinance or regulation." Schuylkill Twp. v. Pa. Builders Ass'n, 935 A.2d 575, 577 (Pa. Cmwlth. 2007), aff'd, 7 A.3d 249 (Pa. 2010).

---

[5] Act of June 13, 1967, P.L. 31, as amended, 62 P.S. §§101-1503.

11

Citing a case dealing with municipal ordinances, which are covered by a special chapter of the Construction Code Act,[6] Respondents argue that additional requirements may be added to those found in the Uniform Construction Code to deal with unusual circumstances or atypical conditions of construction if the conditions are not already specifically covered by the requirements of the corresponding statutes. Resp'ts' Br. in Opp'n to Pet'r's Appl. for Summ. Relief at 7. Respondents then argue that the Lavatory Regulation is enforced in addition to the requirements of the Uniform Construction Code, the Lavatory Regulation addresses special cosmetology concerns, and, unlike the Uniform Construction Code, the Lavatory Regulation requires a certain specific location for the lavatories within the square footage of each licensed business. Id. at 7-9.

We reject Respondents' attempt to avoid express preemption. The Uniform Construction Code specifies the number, accessibility and location of lavatories for beauty salons operating under a certificate of occupancy. The Lavatory Regulation is different from the provisions in the Uniform Construction Code and therefore is preempted. Flanders.

More particularly, the 2009 IBC, Chapter 29 ("Plumbing Systems"), is part of the Uniform Construction Code. Section 2901, titled "Scope," makes clear that the chapter "shall govern the erection, installation, *alteration*, repairs, relocation, replacement, *addition* to, use or maintenance of plumbing equipment and systems." Ex. A, Am. Pet. for Review (emphasis by italics in original). Section 2902.1 of the 2009 IBC specifies the minimum number of fixtures, based

---

[6] Schuylkill Twp. v. Pa. Builders Ass'n, 7 A.3d 249 (Pa. 2010).

on types of occupancy.  Id.  Table 2902.1 of the 2009 IBC specifies the minimum number of lavatories and water closets for "Business Group B" classified occupancies.  Id.[7]  In turn, Section 304.1 of the 2009 IBC specifies that "Barber and beauty shops" are included in the "Business Group B" occupancy classification.  Ex. B, Pet'r's Reply Br.

Further, 2009 IBC, Section 2902.3.1 is titled "Access," and it covers accessibility requirements, ease and duration of availability to public toilet facilities.  Id.  Also, 2009 IBC, Section 2902.3.2 is titled "Location of toilet facilities in occupancies other than covered mall buildings."  That section provides that "the required public and employee toilet facilities shall be located not more than one *story* above or below the space required to be provided with toilet facilities and the path of travel to such facilities shall not exceed a distance of 500 feet (152 400 mm)."  Id. (emphasis by italics in original).  In addition, 2009 IBC, Section 2902.3.3 is titled "Location of toilet facilities in covered mall buildings," and it contains different maximum travel distances to toilet facilities.  Id.

Given the foregoing regulations, together with numerous others whose provisions would be cumulative on this point, it is clear that the Uniform Construction Code provides all the construction details necessary to determine the number, accessibility and location of lavatories for patrons and employees of beauty salons.  Because the Board's Lavatory Regulation implicates different requirements regarding the number, accessibility and location of beauty salon

---

[7] The same is true for Table 403.1 of the 2009 IPC (International Plumbing Code).  Ex. A, Pet'r's Reply Br.

13

lavatories, the Lavatory Regulation is preempted by the plain language of Section 104(d)(1) of the Construction Code Act, 35 P.S. §7210.104(d)(1). Flanders.

Further on this line of reasoning, we reject Respondents' arguments which are erroneously premised on the lack of specific coverage of details in the Uniform Construction Code. As demonstrated above, the Uniform Construction Code covers all aspects of the number, accessibility and location of beauty salon lavatories.

In addition, we reject Respondents' arguments which are erroneously based on the legal premise that State agencies generally may add requirements to those found in the Uniform Construction Code. Under some circumstances, the Construction Code Act expressly permits municipalities[8] to enact ordinances with requirements which equal or exceed requirements of the Uniform Construction Code. Section 503 of the Construction Code Act, 35 P.S. §7210.503. However, this empowerment is not extended to State agencies other than the Departments of Aging, Health, and what is now Human Services. Section 104(d)(3), (4) of the Construction Code Act, 35 P.S. §7210.104(d)(3), (4) (quoted above). The "add-on" authorization is not extended to the Board.

We would reach the same conclusion even if it were determined that the preemption provision of the Construction Code Act is ambiguous. Under such a circumstance, we would attempt to discern the intent of the General Assembly.

---

[8] "Municipality" is defined in Section 103 of the Construction Code Act as: "A city, borough, incorporated town, township or home rule municipality." 35 P.S. §7210.103.

14

In doing so we would use the analytical process our Supreme Court uses to determine which entity the General Assembly intended to have preeminent powers over a given area of regulation. This process, originally set forth in Department of General Services v. Ogontz Area Neighbors Association, 483 A.2d 448 (Pa. 1984), was recently applied by the Court in City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1, ___ A.3d ___ (Pa., No. 18 WAP 2016, filed May 22, 2017), 2017 WL 2229859, and in Southeastern Pennsylvania Transportation Authority v. City of Philadelphia, 101 A.3d 79 (Pa. 2014) (SEPTA). "The first step requires the reviewing court to determine, through examination of the statutes, which governmental entity, if any, the General Assembly expressly intended to be preeminent." SEPTA, 101 A.3d at 87 (citation omitted).

Here, in the Construction Code Act, the General Assembly memorialized its intent that Labor & Industry, and its Uniform Construction Code, shall be preeminent over construction standards by other State boards or agencies, with the notable exceptions of more stringent standards promulgated by the Pennsylvania Departments of Aging, of Health and what is now the Department of Human Services. Section 104(d) of the Construction Code Act, 35 P.S. §7210.104(d). More succinctly, the General Assembly intended Labor & Industry's construction standards to be preeminent over those of the Board.

Having determined as a matter of law that the Lavatory Regulation is preempted by the Construction Code Act, we conclude that Petitioner has stated a clear right to declaratory and injunctive relief. Grine (violation of a statutory scheme constitutes enjoinable harm).

15

## 3. Disputed Facts

In addition, Respondents contend there are factual disputes that preclude summary relief at this stage. Specifically, they argue fact-finding would show the public interest served by the Lavatory Regulation.[9]

However, our determination of preemption is a conclusion of law, and it is difficult to understand how fact-finding about the public interest served by the Lavatory Regulation can modify the plain preemption language of the Construction Code Act. 35 P.S. §7210.104(d). Also, Respondents do not demonstrate how judicial fact-finding can overcome the express "Legislative findings and purpose" in Section 102 of the Construction Code Act, 35 P.S. §7210.102, especially the Legislative findings and purpose related to efficiency in the process of construction and costs of construction.[10] Because fact-finding cannot change the statute-based result, we grant summary relief.

---

[9] For the first time, in its reply brief, Petitioner argues the Board lacks the authority to enforce the Lavatory Regulation because it exceeds the Board's enabling legislation. Because this basis for relief is not raised in its application, and the Board had no opportunity to challenge that legal theory, we do not address it. Commonwealth v. Basemore, 744 A.2d 717, 726-27 (Pa. 2000) ("A reply brief, however, is an inappropriate means for presenting a new and substantively different issue than that addressed in the original brief."); see Pa. R.A.P. 2113(a).

[10] Section 102 of the Construction Code Act, 35 P.S. §7210.102, titled "Legislative findings and purpose," provides in pertinent part (with emphasis added):

> **(a) Findings.-**The General Assembly finds as follows:
>
> (1) Many municipalities within this Commonwealth have no construction codes to provide for the protection of life, health, property and the environment and for the safety and welfare of the consumer, general public and the owners and occupants of buildings and structures. Consumers and occupants may be at risk from substandard construction.

**(Footnote continued on next page…)**

16

**(continued…)**

(2)    Likewise, in some regions of this Commonwealth a multiplicity of construction codes currently exist and some of these codes may contain cumulatively needless requirements which limit the use of certain materials, techniques or products and lack benefits to the public.  Moreover, the variation of construction standards caused by the multiplicity of codes may slow the process of construction and increase the costs of construction.

(3)  The way to insure uniform, modern construction standards and regulations throughout this Commonwealth is to adopt a Uniform Construction Code.

(4)    The model code of the Building Officials and Code Administrators International, Inc., (BOCA), is a construction code which has been widely adopted in this Commonwealth and in the geographical region of the United States of which this Commonwealth is a part.  Adoption of a nationally recognized code will insure that this Commonwealth has a uniform, modern construction code which will insure safety, health and sanitary construction.

**(b)  Intent and purpose.-**It is the intent of the General Assembly and the purpose of this act:

(1)    To provide standards for the protection of life, health, property and environment and for the safety and welfare of the consumer, general public and the owners and occupants of buildings and structures.

(2)  To encourage standardization and economy in construction by providing requirements for construction and construction materials consistent with nationally recognized standards.

(3)  To permit to the fullest extent feasible the use of state-of-the-art technical methods, devices and improvements consistent with reasonable requirements for the health, safety and welfare of occupants or users of buildings and structures.

**(Footnote continued on next page…)**

## III. Conclusion

For all these reasons, we grant Petitioner's Application for Summary Relief, thereby granting the prayer for relief in Petitioner's Amended Petition for Review in the Nature of Complaint for Declaratory and Injunctive Relief.

ROBERT SIMPSON, Judge

**(continued…)**

(4) <u>To eliminate existing codes to the extent that these codes are restrictive, obsolete, conflicting and contain duplicative construction regulations that tend to unnecessarily increase costs or retard the use of new materials, products or methods of construction or provide preferential treatment to certain types or classes of materials or methods of construction.</u>

(5) To eliminate unnecessary duplication of effort and fees related to the review of construction plans and the inspection of construction projects.

(6) To assure that officials charged with the administration and enforcement of the technical provisions of this act are adequately trained and supervised.

\*\*\*

(8) To start a process leading to the design, construction and alteration of buildings under a uniform standard.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eleven Eleven Pennsylvania, LLC, :
                         Petitioner :
                                   :
          v. : No. 651 M.D. 2016
                                   :
Commonwealth of Pennsylvania, State :
Board of Cosmetology; Ian J. Harlow, :
Commissioner of Professional and :
Occupational Affairs, in his official :
capacity; and Pedro A. Cortes, Secretary :
of the Commonwealth of Pennsylvania, :
in his official capacity, :
                       Respondents :

# **O R D E R**

**AND NOW**, this 14th day of August, 2017, Petitioner Eleven Eleven Pennsylvania, LLC's application for summary relief is **GRANTED**. Accordingly, we **DECLARE** that 49 Pa. Code §7.79 (the Lavatory Regulation) is **PREEMPTED** by operation of Section 104(d) of the Pennsylvania Construction Code Act,[1] 35 P.S. §7210.104(d)(1), to the extent it requires a lavatory "within the square footage of the salon."

**FURTHER**, we **DECREE** that Respondents are **PERMANENTLY RESTRAINED** from enforcing the preempted language of the Lavatory Regulation.

 

                                           _____
                                           ROBERT SIMPSON, Judge

---

[1] Act of November 10, 1999, P.L. 491, as amended, 35 P.S. §§7210.101-1103.