# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Education      :
Association,      :
             Petitioner      :
     :
         v.      :    No. 199 M.D. 2021
     :    Submitted: August 8, 2025
Public School Employees'      :
Retirement Board,      :
             Respondent      :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED: January 21, 2026

This case returns to us following remand from the Pennsylvania Supreme Court to address the remaining preliminary objections (POs) filed by the Public School Employees' Retirement Board (PSERB) and Intervenor Pennsylvania School Boards Association, Inc. (PSBA) to the Amended Petition for Review in the Nature of a Complaint Seeking Declaratory Relief (Amended Petition) filed by the Pennsylvania State Education Association (PSEA). As discussed more fully below, PSEA's allegations relate to a resolution adopted by PSERB on March 5, 2021 (Resolution), regarding how PSERB would apply Section 8327.1 of the Public School Employees' Retirement Code (Code), 24 Pa.C.S. § 8327.1, which imposes "withdrawal liability" on "nonparticipating employers," to public school districts that subcontract bargaining unit work to private entities.

In its March 21, 2024 decision, the Supreme Court reversed this Court's July 21, 2022 Order, which sustained the POs challenging PSEA's standing, dismissed

the Amended Petition on that basis, and dismissed the remaining POs as moot. The Supreme Court concluded that PSEA's averments established the requisite substantial, direct, and immediate interest in the outcome of the litigation so as to confer standing. *See Pa. State Educ. Ass'n v. Pub. Sch. Empls.' Ret. Bd.*, 311 A.3d 1017, 1034 (Pa. 2024) (*PSEA*). Because it reversed this Court's ruling on standing, the Supreme Court remanded the matter to this Court for consideration of the remaining POs that we had previously dismissed as moot.

The only POs that remain following the Supreme Court's decision are PSBA's POs asserting that (1) PSEA does not have a private right of action to enforce Section 8327.1 of the Code, and (2) PSEA has failed to state a legally sufficient claim for relief. For the reasons that follow, we overrule both POs and direct PSERB to file an answer to the Amended Petition within 30 days.

## I. BACKGROUND

In 2019, the General Assembly amended the Code by adding Section 8327.1, which states in relevant part:

> **(a) General rule.--**A nonparticipating employer is liable to the [Public School Employees' Retirement System (PSERS or System)] for withdrawal liability in the amount determined under subsection (c). A nonparticipating employer is an employer that is determined by [PSERB] to have ceased:
>
> (1) covered operations under the [S]ystem; or
>
> (2) to have an obligation to contribute under the [S]ystem for all or any of the employer's school employees but continues covered operations.
>
> **(b) Determination.**--An employer shall, within the time prescribed by [PSERB] in a written request, furnish such information as [PSERB] deems necessary to administer this section and to determine whether an employer is a nonparticipating employer. If [PSERB] determines that an employer is a nonparticipating employer, [PSERB] shall:

2

(1) determine the nonparticipation date;

(2) determine the amount of the employer's withdrawal liability;

(3) notify the employer of the amount of the withdrawal liability; and

(4) collect the amount of the withdrawal liability.

24 Pa.C.S. § 8327.1(a), (b). Section 8327.1, which became effective on September 3, 2019,

> was meant to remedy a problem that occurred when an employer withdrew employees from the [System], the multi-employer pension plan for employees of public schools. Previously, when an employer withdrew employees from that plan, it would leave behind unfunded liability for the vested but unpaid benefits that PSERS owed the former employees—a financial burden that would be shouldered by the other employers who remained in the System.

*PSEA*, 311 A.3d at 1020-21 (footnote omitted). As our Supreme Court explained:

> Section 8327.1 imposes "withdrawal liability" upon school district employers that PSERB determines to be "nonparticipating," which include both those that cease "covered operations" under PSERS and those that withdraw some but not all of their employees from the System. Withdrawal liability is an added cost to a school district employer when it makes certain employment decisions that affect the funding of the System, shifting the pension costs onto the employer that makes the decision rather than the employers that remain in the System. Because withdrawal liability affects the bottom-line cost to the employer of withdrawing employees, however, it may affect the employer's decision as to whether a contemplated employment decision is financially worthwhile in the first place.

*Id.* at 1021 (footnote omitted).

3

More than one year after Section 8327.1's effective date, PSERB posted "Information on Withdrawal Liability" on its website. (Am. Pet. ¶ 12.)[1] Thereafter, on March 5, 2021, PSERB adopted the Resolution at issue, which stated:

> RESOLVED that [PSERB] . . . directs the . . . System [] staff to perform an outreach to relevant organizations to elicit input and feedback and to research and prepare a report for [PSERB] **assessing the applicability of Section 8327.1 of the . . . Code to outsourcing scenarios prior to applying the provision of Section 8327.1 to such scenarios.**

---

[1] The post on PSERB's website stated:

Effective September of 2019, Act 72 of 2019 requires PSERS to calculate and collect a withdrawing employer's unfunded retirement benefit liabilities, i.e., the employer's "withdrawal liability." Prior to September 2019, when an employer terminated its participation in PSERS, for all or some of its employees, that employer's share of the [S]ystem's unfunded retirement benefit liability was re-allocated to the remaining employers. Such withdrawals, under a cost-sharing multiple employer plan like PSERS, resulted in an increased funding obligation for the remaining employers. The withdrawal liability is designed to relieve the additional funding burden on the remaining employers.

Under the [Code], an employer is deemed to withdraw from PSERS when it ceases covered operations under the [S]ystem or ceases to have an obligation to contribute under the [S]ystem for all or any of [] its employees but continues covered operations. Thus, an employer will be responsible for paying a withdrawal liability when, for example, it permanently closes all operations or creates an alternate retirement plan to cover some or all new employees. The calculation and payment of the withdrawal liability differs based on whether the employer is ceasing operations entirely or continuing participation in PSERS for some employees, but not all. For a complete withdrawal, a lump sum amount is due PSERS. For a partial withdrawal, the amount owed may be paid over time.

. . . .

If you are considering closing a school, creating an alternate retirement plan, or in any other way limiting PSERS membership for employees, you should contact the PSERS Employer Service Center for more information.

(Am. Pet. ¶ 12 (citation omitted).)

> In the interim, **no action will be taken by [the System] regarding withdrawal liability as it pertains to outsourcing until further policy is approved by [PSERB] and by legislation**.

(*Id.* ¶ 13 & Ex. A (emphasis added).) In other words, the Resolution "stated [PSERB's] intent **not** to apply Section 8327.1 to 'outsourcing' scenarios, i.e., subcontracting, **until further notice**." *PSEA*, 311 A.3d at 1022 (emphasis added).

In June 2021, PSEA initiated the present action against PSERB in this "Court's original jurisdiction, seeking a declaratory judgment that PSERB's Resolution was unlawful, and that Section 8327.1 does, in fact, apply to situations in which the work of school employees is subcontracted to private entities, where such subcontracting results in the removal of employees from the System." *Id.*

In its Amended Petition, filed in August 2021, PSEA asserts that "[u]nder Pennsylvania labor law, subcontracting the work of a bargaining unit is a mandatory subject of bargaining." (Am. Pet. ¶ 16.) PSEA avers that school districts, contemplating subcontracting for economic reasons, commit unfair labor practices "if [they] do[] not clearly advise the union of the projected savings associated with the subcontract and provide the union with an opportunity to prevent the subcontracting by matching those savings." (*Id.* ¶ 17.) PSEA avers that unless school district employers and unions representing school district employees know the amount of withdrawal liability that will be imposed when school districts remove members from the System due to subcontracting, "school districts and unions will not be able to fulfill their obligations under [the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.201-1101.2301]." (*Id.* ¶ 18.) PSEA points to three of its local union affiliates that have been "aggrieved by [PSERB's] lack of action on Section 8327.1" because

5

subcontracting decisions were made, or are being contemplated, without consideration of the withdrawal liability related to those decisions. (*Id.* ¶ 15.)

Specifically, PSEA asserts that the Pocono Mountain Education Support Professionals' Association, PSEA/NEA, the Shikellamy Education Support Professionals' Association, PSEA/NEA, and the Port Allegany Education Support Professionals' Association, PSEA/NEA (collectively, Local Unions) were, or will be, harmed by PSERB's refusal to apply Section 8327.1 to subcontracting scenarios. (*Id.* ¶¶ 15, 28, 38, 46.) PSEA asserts that each of these Local Unions has a collective bargaining agreement with their respective school districts, and in renegotiating those contracts, each school district's board investigated subcontracting bargaining unit work, but without factoring in what its withdrawal liability would be. According to PSEA, the school boards ultimately voted to subcontract or outsource certain positions, or have proposed to do so, resulting in the furlough, or potential furlough, of employees. (*Id.* ¶¶ 20, 22-24, 30-32, 34, 40-41, 43.)[2] However, PSEA asserts that because PSERB refuses to implement Section 8327.1, Local Unions were unable to "fulfill [their] legal obligation to bargain over the subcontracting" of the positions, (*id.* ¶¶ 28, 38, 46), as they "could not have known" or could not have predicted "the economic impact of the subcontracting without knowing whether [the school districts would] be required to pay to fund [their] withdrawal liability." (*Id.* ¶¶ 28, 38, 46.)

---

[2] For example, PSEA avers that Pocono Mountain School District (Pocono Mountain) voted to outsource its transportation services, resulting in the furlough of approximately 120 members of the Pocono Mountain Local Union. (Am. Pet. ¶¶ 22-23.) PSEA alleges that Pocono Mountain Local Union members lost their public school employment and that the Pocono Mountain Local Union could not adequately bargain with the school district because of PSERB's alleged refusal to apply Section 8327.1 to outsourcing. (*Id.* ¶¶ 24-26, 28.)

PSEA also alleges that Chester Upland School District (Chester Upland), which is in financial distress pursuant to the School District Financial Recovery Act (Recovery Act),[3] and its receiver are considering converting its public schools to charter schools to save money. (*Id.* ¶ 50.) PSEA avers that due to PSERB's failure to notify Chester Upland whether Section 8327.1 "will apply in the event public schools are converted to charter schools," Chester Upland and its receiver "cannot predict the true cost of such a conversion or determine whether the conversion results in overall financial savings," which is required by the Recovery Act to approve a charter school conversion. (*Id.* ¶ 51.) If withdrawal liability is considered, PSEA argues, Chester Upland "would not be able to convert public schools to charter schools in compliance with the [] Recovery Act because" it would not lead to financial savings, and, thus, the jobs of PSEA members would not be at imminent risk. (*Id.* ¶¶ 52-53.)

Based on these allegations, PSEA asserts two counts in its Amended Petition. In Count I, PSEA seeks a declaration that the Resolution is *ultra vires*[4] and a legal nullity because Section 8327.1 uses the word "shall" in reference to PSERB's obligations, and PSERB has no power or "authority to suspend implementation of an existing statutory mandate." (*Id.* ¶¶ 59-60, 62.) PSEA also avers that PSERB has no authority to direct the General Assembly to act or suspend the implementation of a statutory mandate "'until further policy is approved . . . by legislation.'" (*Id.* ¶ 63 (quoting Resolution).) In Count II, PSEA seeks a declaration that school

---

[3] The Recovery Act is located in Article VI-a of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 to 27-2702. The Recovery Act provisions appear at 24 P.S. §§ 6-601-A to 6-695-A.

[4] "An *ultra vires* action is one that is performed without authority to act and beyond the scope of legal authorization." *Clairton Slag, Inc. v. Dep't of Gen. Servs.*, 2 A.3d 765, 782 (Pa. Cmwlth. 2010).

districts that subcontract, or "outsource," bargaining unit work fit within the definition of "nonparticipating employers" in Section 8327.1. (*Id.* ¶¶ 68, 71.) PSEA avers that because "the application of Section 8327.1 . . . will lead to costs [to school districts], unions risk violating Section 1201(b)(3) of [] PERA[, 43 P.S. § 1101.1201(b)(3),] when they bargain over subcontracting/outsourcing without knowing whether Section 8237.1 applies" in this context. (*Id.* ¶ 73.)

Both PSERB and PSBA separately filed POs to the Amended Petition. In its POs, PSERB challenges PSEA's standing to sue and asserts that PSEA's claims based on the potential charter school conversion of Chester Upland are not ripe because the conversion may never occur. In its POs, PSBA asserts that PSEA lacks standing to sue, PSEA does not have a private right of action under Section 8327.1 of the Code, and PSEA fails to state a legally sufficient claim for relief.

On July 21, 2022, this Court sustained PSERB's and PSBA's POs challenging PSEA's standing, dismissed the Amended Petition, and dismissed the remaining POs as moot. *See Pa. State Educ. Ass'n v. Pub. Sch. Empls.' Ret. Bd.* (Pa. Cmwlth. No. 199 M.D. 2021, filed July 21, 2022), slip op. at 18, *rev'd*, 311 A.3d 1017 (Pa. 2024).

PSEA appealed to the Supreme Court. On March 21, 2024, the Supreme Court reversed this Court's decision, concluding that PSEA is aggrieved and, therefore, has standing to bring a declaratory judgment action challenging PSERB's Resolution. Specifically, the Court determined:

> [T]he Resolution is the cause of the harm that PSEA describes. Framed in the language of our standing jurisprudence, PSEA is "aggrieved" by the Resolution. PSEA's interest in challenging the Resolution is "substantial" because it far exceeds the interest of the public at large in the correct application of Section 8327.1 [of the Code]. The ordinary citizen has little to no interest in the financial consequences of a school district's decision to subcontract the bargaining unit work of its

8

employees, or whether the school district will be required to pay additional funds into PSERS as a result of that decision. PSEA and its affiliated unions, by contrast, are interested in the matter due to its impact upon the union's negotiating position. PSEA's interest is "direct" because, as established above, the Resolution is causally connected to the asserted harm to the union's ability to effectively bargain over subcontracting decisions. The Resolution is the reason for the mismatch in the parties' understandings of when Section 8327.1 applies. If PSEA's view of the statute is correct, then school districts, relying upon the Resolution, are premising subcontracting decisions upon an inaccurate assessment of the potential cost-savings, placing the union in a materially inferior negotiating position. Finally, PSEA's interest is "immediate" because the causal connection between the Resolution and the asserted harm is real and concrete, not "remote or speculative." Indeed, according to PSEA's factual averments (which must be accepted as true when considering preliminary objections)[,] the Resolution already has harmed local unions' interests in negotiations over subcontracting decisions in the Pocono Mountain, Shikellamy, and Port Allegany school districts.

These averments establish a substantial, direct, and immediate interest sufficient to warrant a request for the sort of remedy that a declaratory judgment action seeks—a clarification of the law to resolve a dispute between interested parties over its meaning. . . .

*PSEA*, 311 A.3d at 1031 (footnotes omitted). Therefore, the Supreme Court reversed our Court's ruling as to PSEA's standing and remanded the matter for our consideration of the remaining, previously dismissed POs. With respect to PSEA's averments related to the charter school conversion of Chester Upland, the Supreme Court stated:

PSEA initially sought a declaration that Section 8327.1 [of the Code] applies to the conversion of a public school into a charter school, as well, but **it has since abandoned that aspect of its action because the proposed charter school conversion that it cited is no longer under consideration.** *See* PSEA's Br. at 3 n.1 (noting that **PSEA "is no longer seeking relief related to charter schools"**).

*Id.* at 1022 n.8 (emphasis added).

9

Accordingly, given the Supreme Court's ruling on standing and PSEA's express abandonment of its averments relating to charter school conversions, the only POs that remain to be decided are PSBA's POs asserting that (1) PSEA does not have a private right of action to enforce Section 8327.1 of the Code, and (2) PSEA has failed to state a legally sufficient claim for declaratory relief.[5]

## II. ANALYSIS

### A. Private Right of Action

First, PSBA asserts that PSEA has no private right of action under Section 8327.1 of the Code, and, therefore, this Court lacks jurisdiction over this action. Section 8327.1 provides that PSERB "shall" take certain steps to calculate and collect "withdrawal liability" from applicable employers in compliance with the Code. *See* 24 Pa.C.S. § 8327.1(b). PSBA asserts that the plain language of the statute does not authorize a private right to sue to enforce that provision, and, thus, PSEA may not bring an action under Section 8327.1.

However, as PSEA correctly points out, PSEA is **not** asserting a claim under Section 8327.1 of the Code. (*See* PSEA's Answer to PSBA's POs ¶ 32 ("PSEA has not asserted any claims under Section 8327.1 of the Retirement Code.").) Rather, PSEA seeks relief exclusively under the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541. (*See* Am. Pet. ¶¶ 56, 66.) Section 7533 of the Declaratory Judgments Act provides:

---

[5] When reviewing preliminary objections to a petition for review in our Court's original jurisdiction, we "must treat as true all well-pleaded, material and relevant facts together with any reasonable inference[s] that can be drawn from those facts." *County of Berks v. Pa. Off. of Open Records*, 204 A.3d 534, 539 n.7 (Pa. Cmwlth. 2019). We do not accept as true "conclusions of law, unwarranted inferences from facts, expressions of opinion or argumentative allegations." *Id.* "[W]here any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections." *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 416 (Pa. Cmwlth. 2006).

10

Any person interested under a deed, will, written contract, or other writings constituting a contract, or **whose rights, status, or other legal relations are affected by a statute**, municipal ordinance, contract, or franchise, **may have determined any question of construction or validity arising under the** instrument, **statute**, ordinance, contract, or franchise, **and obtain a declaration of rights, status, or other legal relations thereunder.**

42 Pa.C.S. § 7533 (emphasis added).

Here, PSEA alleges that its rights, and the rights of its members, are directly affected by Section 8327.1 of the Code and PSERB's interpretation and lack of implementation thereof. PSEA asserts that "there is *uncertainty* as to the meaning of Section 8327.1 in the context of outsourcing," as evidenced by PSERB's statements in the Resolution. (PSEA's Br. at 22 (italics in original).) PSEA seeks a declaration that "Section 8327.1 of the Code applies when participating school employers subcontract[]/outsource[] work to private actors, resulting in removal of public[ ]school employees from the System." (Am. Pet. at 19.) In other words, PSEA seeks a determination from this Court regarding the construction of a statutory provision that affects its rights and the rights of its members. That is precisely the type of claim contemplated by Section 7533 of the Declaratory Judgments Act.

Therefore, because PSEA is not asserting a claim under Section 8327.1 of the Code, but rather under the Declaratory Judgments Act, we overrule PSBA's PO.

### B. Legal Sufficiency of Claim (Demurrer)

#### 1. Applicable Legal Standards

A "'demurrer is a preliminary objection to the legal sufficiency of a pleading and raises questions of law.'" *Raynor v. D'Annunzio*, 243 A.3d 41, 52 (Pa. 2020) (citation omitted). To sustain a demurrer, this Court must conclude that "'on the facts averred, the law says with certainty that no recovery is possible.'" *Com. by*

*Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1022 (Pa. 2018) (citation omitted). "'Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.'" *Id.* (citation omitted). "When ruling on a demurrer, a court must confine its analysis to the [petition for review]." *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010). "Thus, the court may determine only whether, on the basis of the [petitioner's] allegations, [the petitioner] possesses a cause of action recognized at law." *Fraternal Ord. of Police Lodge No. 5 by McNesby v. City of Philadelphia*, 267 A.3d 531, 541 (Pa. Cmwlth. 2021) (*en banc*).

### 2. Demurrer to Count II[6]

With these principles in mind, we must determine whether Count II of the Amended Petition sets forth a legally sufficient claim for declaratory relief. In Count II, PSEA seeks a declaration that Section 8327.1 of the Code applies when public school districts outsource bargaining unit work to private entities, resulting in the removal of public school employees from the System. (Am. Pet. at 19.)[7] In

---

[6] In Count I of the Amended Petition, PSEA seeks a declaration that PSERB acted *ultra vires* in enacting the Resolution and the Resolution is a legal nullity. (Am. Pet. at 17; *see id.* ¶ 64.) In particular, PSEA avers that Section 8327.1 of the Code imposes a mandatory duty on PSERB, which "has no authority to suspend the implementation of an existing statutory mandate until some indefinite time in the future when it may approve policy" relating to its application of the statute. (*Id.* ¶ 62.) PSEA contends that because the Resolution indicates PSERB's refusal to implement Section 8327.1, contrary to the statutory mandate, PSERB acted *ultra vires* in adopting the Resolution.

Notably, however, in its POs and supporting briefs, PSBA does not mention or address the averments that PSERB acted *ultra vires* in adopting the Resolution, nor does PSBA specifically challenge PSEA's requested declaratory relief in Count I. Therefore, because it appears that PSBA does not assert a demurrer to Count I, we confine our review of its demurrer PO to Count II.

[7] In Count II, PSEA also initially sought a declaration that "Section 8327.1 of the Code applies when participating school employers convert district schools to charter schools, resulting in removal of public[ ]school employees from the System." (Am. Pet. at 19.) However, as explained *supra*, PSEA has since abandoned that claim for relief. *See PSEA*, 311 A.3d at 1022 n.8.

demurring to this Count, PSBA asserts that PSEA does not state a legally sufficient claim because the school districts identified in the Amended Petition are not "nonparticipating employers" as defined in Section 8327.1. PSBA contends that even in situations where public school employees are furloughed due to the outsourcing of bargaining unit work, "those individuals are no longer 'employees' of the school district." (PSBA's Br. at 17.) According to PSBA, because school districts that outsource work to private actors are not "nonparticipating employers," PSERB is not required to apply Section 8327.1 in those situations.

The purpose of the Declaratory Judgments Act "is **to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations**, and [it] is to be **liberally construed and administered**." 42 Pa.C.S. § 7541(a) (emphasis added). Declaratory relief is limited, however, by "certain justiciability concerns," including that a petitioner "must allege an interest which is direct, substantial and immediate, and must demonstrate the existence of a real or actual controversy." *Off. of Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014). Hence, declaratory relief is appropriate only where the declaratory judgment, if granted, would resolve the actual controversy between the parties. *See Eleven Eleven Pa., LLC v. State Bd. of Cosmetology*, 169 A.3d 141, 145 (Pa. Cmwlth. 2017).

At issue here are the parties' conflicting interpretations of Section 8327.1 of the Code, specifically as it applies to subcontracting or outsourcing. PSEA contends that "[a]t the very least, the meaning of Section 8327.1 of the Code is uncertain" and that "[b]y enacting the Resolution, [PSERB] signaled that it did not know whether to apply Section 8327.1 to [outsourcing] scenarios." (PSEA's Br. at 24.)

Recently, this Court considered a preliminary objection in the nature of a demurrer to a school district's claim for declaratory relief involving the

13

interpretation of Section 8327.1 of the Code. *See Harrisburg Sch. Dist. v. Pub. Sch. Empls.' Ret. Sys.* (Pa. Cmwlth., No. 605 M.D. 2024, filed Oct. 7, 2025).[8]  In that case, PSERS argued that the phrase "nonparticipating employer[]" in Section 8327.1 includes a closed charter school; the school district, on the other hand, argued that Section 8327.1 does not apply to a closed charter school.  Like PSEA in this case, the school district "highlight[ed] that it [was] 'not asserting a legal claim <u>under</u> Section 8327.1 [of the Code]' but '[was] seeking a declaration under the [Declaratory Judgments Act] as to its legal status, application[,] and enforcement.'" *Id.*, slip op. at 15 (citation omitted) (underlining in original).  The school district also asserted "that [its] [p]etition [for review] raise[d] substantial questions concerning the scope, applicability, and constitutionality of Section 8327.1 of the [] Code, causing enough doubt that [PSERS'] preliminary objections should be overruled." *Id.*

This Court began its analysis by specifically observing that "the [s]chool [d]istrict commenced this action by invoking our [Court's] original jurisdiction pursuant to the [Declaratory Judgments Act]." *Id.*, slip op. at 7.  We explained that "a declaratory judgment neither commands action nor prohibits conduct" but "provides a definitive judicial pronouncement of the parties' rights and obligations, standing on its own without any executory process." *Id.*, slip op. at 7-8.

In concluding that the school district stated a legally sufficient claim for declaratory relief, we stated:

> [T]he [Declaratory Judgments Act] is intended "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations."  42 Pa.C.S. § 7541(a).  In accordance with that

---

[8] Under Section 414(a) of this Court's Internal Operating Procedures, we may cite an unreported memorandum decision of this Court, issued after January 15, 2008, for its persuasive value.  210 Pa. Code § 69.414(a).

purpose, the [Declaratory Judgments Act] "is to be liberally construed and administered." *Id.* Pursuant to the [Declaratory Judgments Act], "[a]ny person . . . whose rights, status, or other legal relations are affected by a statute[] . . . may have determined any question of construction or validity arising under the . . . statute[] . . . and obtain a declaration of rights, status, or other legal relations thereunder." *Id.* § 7533.

Here, **there is a present and substantial controversy as to whether Section 8327.1 of the [] Code applies** to a closed charter school's "liabilities and obligations" under the [Charter School Law[9]] and whether PSERS' interpretation of that provision (*i.e.*, its claim to withdrawal liability) is consistent with constitutional and statutory limits. **A declaration from this Court, either on statutory construction grounds asserted in Count I of the [p]etition [for review], or on constitutional grounds asserted in Counts II, III, and IV of the [p]etition [for review], would resolve that dispute and terminate the uncertainty surrounding entitlement to the disputed funds.** Such relief cannot be obtained through any administrative remedy, and thus, **this controversy falls squarely within the scope of the [Declaratory Judgments Act].** *See* 42 Pa.C.S. § 7541(a).

*Id.*, slip op. at 16 (some alterations in original) (emphasis added). This Court further noted that PSERS' demurrer "fail[ed] to attack the sufficiency of the [s]chool [d]istrict's claims **in relation to the [Declaratory Judgments Act]**" and, instead, merely "present[ed] a legal defense, not a true demurrer." *Id.* Consequently, because this Court was "not confident that the [s]chool [d]istrict [was] precluded from recovery, and PSERS' preliminary objection [was] **not a true demurrer to the sufficiency of the . . . declaratory judgment action**," we overruled the demurrer. *Id.*, slip op. at 17 (emphasis added).

Similarly, in this case, there is a present and substantial controversy as to whether Section 8327.1 of the Code applies to outsourcing scenarios, and a declaration from this Court on statutory construction grounds "would resolve that

---

[9] Act of July 23, 1970, P.L. 563, *as amended*, 24 P.S. §§ 17-1701-a to 17-1751-a.

15

dispute and terminate the uncertainty surrounding" the statute's application to such scenarios. *Id.*, slip op. at 16; *see Off. of Governor*, 98 A.3d at 1234-35 ("It is precisely under such circumstances, where a party is in need of relief from 'uncertainty and insecurity with respect to rights, status, and other legal relations,' and where a legal or administrative remedy is inadequate, that declaratory relief is warranted."). Furthermore, as in *Harrisburg School District*, PSBA's demurrer in this case does **not** challenge the sufficiency of PSEA's claims **in relation to the Declaratory Judgments Act**. (*See* PSBA's POs ¶¶ 34-57; PSBA's Br. in Support of POs at 15-19.) PSBA merely avers that its interpretation of the statute is correct and that "PSEA has failed to set forth a violation of Section 8327.1 [of the Code]." (PSBA's POs ¶ 34.)

It is not clear and free from doubt that Section 8327.1 of the Code applies to outsourcing scenarios, as asserted by PSEA, or that it does not, as asserted by PSERB and PSBA. *See Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 416 (Pa. Cmwlth. 2006) ("[W]here any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections."). If granted, a declaratory judgment on this issue would meaningfully clarify how PSERB should calculate withdrawal liability for school districts that outsource bargaining unit work to private actors and would resolve the present controversy.

Accepting PSEA's factual averments as true, and given the liberal construction this Court must give to the Declaratory Judgments Act, we conclude that Count II of the Amended Petition states a legally sufficient claim for declaratory relief. Therefore, we overrule PSBA's PO in the nature of a demurrer to Count II.

16

### III. CONCLUSION

Accordingly, we overrule PSBA's PO asserting that PSEA has no private right of action under Section 8327.1 of the Code and overrule its PO asserting a demurrer to Count II of the Amended Complaint. We direct PSERB to file an answer to the Amended Petition within 30 days.

_____
RENÉE COHN JUBELIRER, President Judge

Judge Dumas did not participate in the decision in this case.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Education
Association,
:
:
                Petitioner     :
:
            v.            :   No. 199 M.D. 2021
:
Public School Employees'
Retirement Board,
:
:
               Respondent   :

## **O R D E R**

NOW, January 21, 2026, Intervenor Pennsylvania School Boards Association, Inc.'s Preliminary Objections to the Pennsylvania State Education Association's (PSEA) Amended Petition for Review (Amended Petition) are hereby OVERRULED, and the Public School Employees' Retirement Board (PSERB) is hereby DIRECTED to file an answer to the Amended Petition within 30 days. PSERB's Preliminary Objection challenging the ripeness of PSEA's claims relating to potential charter school conversions is hereby DISMISSED AS MOOT.

_____
RENÉE COHN JUBELIRER, President Judge