## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kareem George,                               :
                              Petitioner      :
                                             :
              v.                             :
                                             :
Commonwealth of Pennsylvania,                :
Department of Corrections,                   :
Records Supervisor, Kathleen                 :
Witmer, SCI Rockview,                        :
Superintendent, Bobi Jo Solomon,             :   No. 409 M.D. 2021
                              Respondents     :   Submitted: February 3, 2026


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STELLA M. TSAI, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                              FILED: March 16, 2026


Before this Court in our original jurisdiction is an application for summary relief filed *pro se* by Petitioner Kareem George (George) concerning his pending petition for writ of mandamus (mandamus petition). The mandamus petition avers that Respondents, primarily the Department of Corrections and its personnel (collectively, the Department), wrongly amended the effective date of George's prison sentence for offenses committed in 2002 while he was on parole from a prior conviction. George asks this Court to direct the Department to correct the sentence to reflect an effective date of August 27, 2007, the date of his guilty plea and colloquy. Upon review, we deny George's application for summary relief.

## I. Factual and Procedural Background

In December 2002, George, who was on parole at the time from a 1995 conviction, was involved in a dispute that began in a Harrisburg nightclub and ended in a nearby parking garage where he shot at several individuals, one of whom was killed. Guilty Plea Colloquy at 11.[1] He fled, was ultimately arrested in New York State on January 6, 2005, and has been in Department custody since then. *Id*. at 11 & 25.

On August 27, 2007, George appeared at his guilty plea and sentencing colloquy for the 2002 offenses. The prosecutor stated that a plea agreement had been reached: George would serve 15 to 30 years on a third-degree murder charge to run concurrently with sentences on lesser charges from the same incident. Guilty Plea Colloquy at 2 & 8. The prosecutor did not state that any time related to George's back time on the 1995 conviction or his parole violations from the 2002 incident would run concurrently with his new sentence; the prosecutor stated only that "discussions" had taken place and that "any questions that [George] has" could be "cleared up" at the colloquy. *Id*. at 3.

George's counsel asked that the sentence on the 2002 offenses be effective as of the August 27, 2007, colloquy date and run concurrently with a one-year sentence that had already been imposed for George's technical parole violations on his 1995 conviction. *Id*. at 9-10. The sentencing court responded:

> The sentence will be effective today. That was no question. Mr. George, I just want to be crystal clear, to the extent that I can make it concurrent with your technical violations I would do that. But I'm not even so sure I can do that. I just want to be clear with you that that may not happen. Do you understand that?

---

[1] The colloquy transcript is appended to George's mandamus petition.

. . . .

> I'm recommending it. I'm stating that for the record. But that can be ignored by the Parole Board. Do you understand that?

*Id*. at 10. George nodded his agreement. *Id*. at 10.

At the colloquy, after George formally pleaded guilty, the court confirmed that a plea agreement had been reached for George to serve 15 to 30 years on the 2002 offenses. Guilty Plea Colloquy at 14. The sentencing court reiterated that it was uncertain whether George's parole violation or back time could run concurrently with his sentence on the new charges and stated that "even though I'm going to do what you ask" and recommend that George's parole violation sentence run concurrently to the new sentence, "that's not part of the plea agreement, that if the Parole Board does not give [George] credit that's not a condition of the plea agreement?" *Id*. at 14-15. George's counsel responded "Right." *Id*. at 15.

Near the end of the colloquy, the sentencing court reiterated that the sentence on the 2002 offenses "is effective today's date" and that "[t]o the extent that the Court can, this sentence can run concurrently with" George's parole violation sentence: "That seems to me to comply not with the plea agreement but with what our discussion was. The full understanding that that's – the Court may not have the authority to do that. And if we don't, we'll give [George] the appropriate time credit." Guilty Plea Colloquy at 27. The sentencing court lastly advised George that he had 10 days to file a post-sentence motion and 30 days from the outcome of that motion to further appeal to this Court. *Id*. at 29. The record before this Court does not indicate that George filed a post-trial motion or notice of appeal after the colloquy.

In December 2012, George filed a Post Conviction Relief Act (PCRA)[2] petition raising issues regarding his August 27, 2007, sentencing for the first time.[3] *See Commonwealth v. George* (Pa. Super., No. 465 MDA 2013, filed Jan. 23, 2014), 2014 WL 11016401 (unreported) (*George I*). The PCRA petition challenged the validity of his plea based on *Commonwealth v. Zuber*, 353 A.2d 441 (Pa. 1976).

In *Zuber*, the sentencing court expressly adopted the prosecutor's "specific promise" to recommend to the Parole Board that the defendant's back time run concurrently with his sentence on new charges. *Id*. at 444-45. The Commonwealth acknowledged that the promise was void because "a parole violator convicted and sentenced to prison for another offense must serve his or her back time and the new sentence in consecutive order" and the Board had no power to grant such a request but asked that the matter be returned for an administrative remedy. *Id*. at 443. The Court instead reinstated the defendant's original plea terms because "the natural and obvious underlying inference that the Parole Board had, at the least, the [o]ption to accept or reject such a request thereby became an integral part of the bargain" made by the defendant. *Id*. at 445-46.

In *George I*, the Superior Court did not address the merits of George's contentions regarding his plea because it concluded that the petition was untimely,

---

[2] 42 Pa.C.S. §§ 9541-9546.

[3] George's first PCRA petition, filed in August 2008, pertained to the substance of the 2002 offenses but did not raise any issues regarding his sentence for those offenses. The Superior Court upheld the PCRA court's dismissal of that petition. *See Commonwealth v. George* (Pa. Super., No. 66 MDA 2010, filed Oct. 18, 2010) (unreported). Previous unreported Superior Court decisions regarding George's earlier filings are cited herein pursuant to the Superior Court's Internal Operating Procedures, which allow citation of an unreported memorandum decision of that court filed prior to May 2, 2019 "when the memorandum is relevant to a criminal action or proceeding because it recites issues raised and reasons for a decision affecting the same defendant in a prior action or proceeding." 210 Pa. Code § 65.37(B)(2).

having been raised more than five years after his sentence became final in September 2007; moreover, his "discovery" of *Zuber* did not meet the after-discovered evidence exception to the PCRA's time bar rules. *Id.*, slip op. at 6-9, 2014 WL 11016401, at *3.

In February 2016, George filed another PCRA petition. *Commonwealth v. George* (Pa. Super., No. 202 MDA 2017, filed Dec. 8, 2017), 2017 WL 6163492 (unreported) (*George II*). He asserted that his plea agreement was for his parole violation and back time to run concurrently with his sentence on the 2002 offenses, that he learned in December 2015 that this was not the case, and that he was not receiving the benefit of his agreement.[4] *Id.*, slip op. at 1, 2017 WL 6163492, at *1.

The Superior Court concluded in *George II* that George's 2016 petition did not fall within the PCRA but was instead an action seeking to enforce the terms of his plea agreement; the matter was remanded to the sentencing court to be treated as a petition to modify his sentence. *George II*, slip op. at 5, 2017 WL 6163492, at *2. On that remand and relevant to this appeal, the sentencing court held a hearing at which George testified and both sides submitted post-hearing briefs. *Commonwealth v. George* (Pa. Super., No. 316 MDA 2019, filed Apr. 3, 2020), slip op. at 3, 2020 WL 1656148, at *2 (unreported) (*George III*). In January 2019, the sentencing court held that running George's "back time" on the old sentence concurrently with his new sentence was not a term of his plea agreement and denied his petition. *Id.*, slip op. at 3, 2020 WL 1656148, at *2. The Superior Court reviewed

---

[4] George's prior PCRA petition raised issues regarding the concurrency of his parole violation and back time and relied on *Zuber*, which pointed out that such concurrency is not legally proper. This suggests that George was aware as of filing that petition in 2012 that his sentences were not running concurrently. Nevertheless, he asserted in his 2016 petition that he believed his sentences were running concurrently until he learned otherwise in December 2015.

5

the colloquy and affirmed in April 2020, agreeing with the sentencing court that George's plea agreement did not include his back time running concurrently to his new sentence. *Id*., slip op. at 7-9, 2020 WL 1656148, at *3-4.

Notwithstanding the foregoing, George filed the subject mandamus petition in this Court's original jurisdiction in November 2021. He maintained that the original sentencing court stated in the colloquy that the effective date for the sentence on the 2002 offenses would be the colloquy date of August 27, 2007, which George stated would result in a minimum release date in August 2022 and a maximum release date in August 2037. Mandamus Petition at 2. George asserted that in December 2015, when he received a copy of his DC-16E sentence status summary form[5] for the 2002 offenses, it indicated an effective date of July 21, 2013, not August 27, 2007. *Id*. He averred that the Department lacked authority to change or "interfere with" the sentencing court's order setting the effective date as August 27, 2007, and asked this Court to direct the Department to change the effective date to August 27, 2007. *Id*. at 3.

In January 2022, the Department filed preliminary objections challenging the legal sufficiency of George's mandamus petition. The Department asserted that once George pleaded guilty to the 2002 offenses at the August 2007 colloquy, he "became a convicted parole violator and thus was required to serve a significant back time parole violation hit" on his prior sentence before beginning the 15-to-30-year sentence on the 2002 offenses. Preliminary Objections at 5. The Department acknowledged that the original sentencing court deemed the new

---

[5] Form DC16E lists an inmate's offenses and the minimum and maximum sentences for each, the minimum and maximum release dates, and any remarks relevant to the inmate's sentence. *See Butler v. Dep't of Corr.* (Pa. Cmwlth., No. 271 M.D. 2017, filed Feb. 14, 2018), slip op. at 3-4, 2018 WL 845010, at *2 (unreported).

sentence's effective date to be August 27, 2007. *Id*. However, the Department averred that any impression that this meant the sentencing court definitively ordered concurrent sentences was refuted by the sentencing court's repeated statements, to which George assented on the record, that while the sentencing court could recommend that result, any such decision was not part of the plea agreement for the 2002 offenses and would be determined by parole authorities. *Id*. at 5-7.

On August 15, 2023, this Court issued a single-judge memorandum opinion and order overruling the Department's preliminary objections. The opinion rejected the Department's contention that George's guilty plea to the 2002 offenses automatically rendered him a convicted parole violator because the Parole Board retained discretion to make any such determination. *Id*., slip op. at 5-6. The opinion added that even if the Parole Board had formally deemed George a convicted parole violator, the Department could not assert facts outside of George's mandamus petition, which alleged only that the Department wrongly changed the effective sentence date from the sentencing court's order of August 27, 2007, to July 21, 2013, and that this violated the terms of his plea agreement. *Id*. at 6-7.

In September 2023, the Department filed an answer and new matter to George's mandamus petition. The Department denied George's allegations regarding his sentence for the 2002 offenses and maintained the propriety of its calculations. Dep't Answer at 3-7. In its new matter, the Department averred that when George committed the 2002 offenses, he was on parole from a prior 6-to-15-year sentence imposed in 1995; that in February 2005, the Parole Board imposed a 12-month sentence for George's technical parole violations associated with the 2002 offenses; and that in October 2007, several months after the August 2007 colloquy, the Parole Board deemed George a convicted parole violator and sentenced him to

7

36 months of back time on his prior sentence, to run concurrently with the 12 months he received for his technical parole violations. *Id*. at 9-10. The Department explained that this resulted in a maximum date of December 8, 2015, for George's time still due on the 1995 offenses and his parole violations. *Id*. at 10. The Department averred that including credit for time served after his January 2005 arrest and prior to his August 2007 plea on the 2002 offenses and then for time served between the April 2005 criminal complaint on the 2002 offenses and the August 2007 colloquy for those offenses, George became available to begin his sentence on the 2002 offenses on July 21, 2013, because back time must be completed before the a parole violator may commence a new sentence and cannot be credited towards the new sentence.[6] *Id*. at 10-13.

The Department added that George's proper remedy would have been to timely appeal the Parole Board's October 2007 post-revocation calculations that determined his parole violation and back time would end in December 2015, rather than by filing a mandamus petition 14 years later. Answer at 14. Lastly, the Department maintained that George's claim seeking concurrency of his parole violation and back time was previously litigated and rejected by the Superior Court in *George III*. *Id*. George answered the Department's new matter, acknowledging the Department's calculations but maintaining that the Department was bound to follow the sentencing court's statements at the colloquy that his sentence on the 2002 offenses would be effective as of the August 27, 2007, which meant that his parole violation and back time would be concurrent to the new sentence beginning on that date. George's Answer at 1-3.

---

[6] The Department attached copies of the DC-16E sentence status summary forms for George's 1995 convictions and 2002 offenses as well as documentation reflecting his formal parole violations.

8

In August 2025, George filed the subject application for summary relief, asserting that his right to the sentencing court's stated effective date of August 27, 2007, was legally clear and that mandamus relief was proper. Application for Summary Relief at 1-3. He asked this Court to declare that his sentence for the 2002 offenses began on August 27, 2007, and would "run concurrently with his prior term" and to order the Department to amend its records accordingly. *Id*. at 4.

The Department answered George's application, maintaining its position that George's sentence for the 2002 offenses was properly calculated and that he had not established a legal right to have that sentence run concurrently with his parole violation or back time sentences associated with his 1995 convictions. Dep't Answer to Application for Summary Relief at 1-9. Briefing is now complete and this matter is ripe for disposition.

## II. Issue

George maintains that the sentencing court expressly ordered that his sentence on the 2002 offenses would begin on August 27, 2007, the colloquy date, which meant that the sentencing court intended any outstanding parole violation or back time from the 1995 convictions to run concurrently with the new sentence. He asserts that mandamus relief is warranted to correct the Department's unauthorized determination that his sentence on the 2002 offenses would not start until after he completed his parole violation and back time sentences.

## III. Discussion

An application for summary relief may be granted if a party's right to judgment is clear and no material issues of fact are in dispute. *See* Pa.R.A.P.

9

1532(b); *Eleven Eleven Pa., LLC v. Commonwealth*, 169 A.3d 141 (Pa. Cmwlth. 2017). When ruling on an application for summary relief, this Court "view[s] the evidence of record in the light most favorable to the non-moving party and enter[s] judgment only if there is no genuine issue as to any material facts and the right to judgment is clear as a matter of law." *Eleven Eleven*, 169 A.3d at 145 (internal quotation marks omitted).

"[M]andamus is an extraordinary writ which lies to compel performance of a ministerial act or mandatory duty where there is a clear legal right in the petitioner, a corresponding duty in the respondent, and a want of any other appropriate and adequate remedy." *Cooper v. City of Greensburg*, 363 A.2d 813, 815 (Pa. Cmwlth. 1976). "The purpose of mandamus is not to establish legal rights but only to enforce those legal rights that have already been established." *Orange Stones Co. v. City of Reading, Zoning Hearing Bd.*, 32 A.3d 287, 290 (Pa. Cmwlth. 2011). "Mandamus will lie only to compel public officials to perform their duties in accordance with the law [when] those duties are ministerial in character and not discretionary." *Rakus v. Robinson*, 382 A.2d 770, 772 (Pa. Cmwlth. 1978) (citing *Rose Tree Media Sch. Dist. v. Dep't of Pub. Instruction*, 244 A.2d 754 (Pa. 1968)). "Mandamus can only be used to compel performance of a ministerial duty and will not be granted in doubtful cases." *Allen v. Dep't of Corr.*, 103 A.3d 365, 370 (Pa. Cmwlth. 2014).

In our original jurisdiction, this Court has "routinely entertained" mandamus petitions seeking orders to compel the Department to "honor particular sentencing orders." *Saunders v. Dep't of Corr.*, 749 A.2d 553, 555 (Pa. Cmwlth. 2000). However, in accordance with the above, the right to relief must be clearly established. *Orange Stones*, 32 A.3d at 290; *Cooper*, 363 A.2d at 815. Here, George

10

must establish a clear legal right to the relief he seeks, specifically that the sentencing court ordered his new sentence to run concurrently with the back time on his prior sentence.

Generally, back time on an old sentence and the time due on a new sentence cannot run concurrently. The parole violation statute in effect when George was sentenced for the 2002 offense in 2007 stated:

> If a new sentence is imposed upon such parolee, the service of the balance of said term originally imposed shall precede the commencement of the new term imposed in the following cases: (1) If a person is paroled from any State penal or correctional institution under the control and supervision of the Department of Justice and the new sentence imposed upon him is to be served in any such State penal or correctional institution.

Section 21.1.(a) of the former Parole Act, *former* 61 P.S. § 331.21a(a), repealed by the Act of August 11, 2009, P.L. 147.[7] Accordingly, the parole violator must "serve his back[ ]time and then his new state sentence in consecutive order, regardless of a guilty plea agreement and sentence directing that the parole violator's back[ ]time on his original sentence run concurrently with his new sentence. . . . In short, any agreement . . . indicating that his new criminal sentence would run concurrently with his back[ ]time was invalid." *Palmer v. Pa. Bd. of Prob. & Parole*, 134 A.3d 160, 165 (Pa. Cmwlth. 2016) (citing *Zuber*).

However, our Supreme Court also held in *Zuber* that the Commonwealth, including its agencies, must abide by the terms of a negotiated plea agreement even if doing so contravenes a statutory directive. 353 A.2d at 443-45.

---

[7] When the Parole Code was reenacted in 2009 as the Prisons and Parole Code, the successor provision separated the state and federal aspects of the former provision into separate provisions, but the requirement that a parole violator serve his back time before his new sentence can begin remains the same. *See* 61 Pa.C.S. § 6138(5).

11

More recently, in *Commonwealth v. Martinez*, 147 A.3d 517 (Pa. 2016), the Court relied on *Zuber*'s reasoning in the context of sexual offender registration requirements and concluded that the defendants were entitled to the requirements in effect when they entered their plea agreements rather than the requirements that came into effect when the law subsequently changed. *Id*. at 532-33. The Court concluded that when an "alleged term is part of the parties' plea agreement," it is enforceable even if it may not be legally authorized:

> Indeed, despite the unenforceable nature of the agreed-upon sentence in *Zuber*, this Court determined that Zuber was entitled to the benefit of his bargain. In other words, the *Zuber* Court did not simply conclude that Zuber was not entitled to the bargained-for sentence because the sentence was unenforceable. Instead, the Court examined the parties' agreement, found that the agreement included the unenforceable sentence, and held that Zuber was entitled to that sentence.

*Martinez*, 147 A.3d 517, 533 n.19 (Pa. 2016).

Keeping these concepts in mind, we note that in the sentencing context, "mandamus can be maintained to have the Department comply with the clear instructions of the trial court." *Oakman v. Dep't of Corr.*, 893 A.2d 834, 837 (Pa. Cmwlth. 2006). There, in a dispute over credit associated with a parole violation sentencing order, we stated that when a sentencing court issues an order "that is clear, . . . mandamus would then be available to an inmate to have the Department carry out that clear direction." *Id*. However, if an order is unclear or ambiguous with regard to a term, "the defendant is required to express his concerns about this matter by raising an objection to the sentencing court to clarify its sentence, not seek mandamus." *Id*.

12

In *Duncan v. Department of Corrections*, 137 A.3d 575 (Pa. 2016), our Supreme Court held that while mandamus was not available to compel the Department to enforce a concurrent sentencing order that conflicted with the statutory scheme and precedent, the defendant could "seek modification of his sentence *nunc pro tunc* before the sentencing court, asserting [that] he has not received the benefit of the guilty plea bargain negotiated with the Commonwealth and approved by the court." *Id*. at 576. "[T]he critical query in a mandamus action is what did the sentencing court actually intend." *Allen v. Dep't of Corr.*, 103 A.3d 365, 371 (Pa. Cmwlth. 2014).

Here, the prosecutor at George's guilty plea colloquy stated that the offer for George's plea was 15 to 30 years on the 2002 third-degree murder charge, concurrent with sentences on the lesser included charges from the incident. Guilty Plea Colloquy at 3 & 8. He advised that "discussions" had taken place regarding "any potential parole hit" and that through the colloquy, "we can clear up any questions" that George might have; however, the prosecutor did not state that an agreement had been reached in that regard. *Id*. at 3 & 9. George's counsel asked if George's sentence on the 2002 offenses could run concurrently with the one-year technical parole violation sentence he had already received and if the effective date of the sentence could be the colloquy date of August 27, 2007. *Id*. at 9. The sentencing court expressly agreed that the colloquy date would be the effective sentence date but did not agree to order the sentence on the 2002 offenses to run concurrently with George's technical parole violation sentence. *Id*. at 10. The sentencing court did agree to recommend that arrangement but advised George that the Parole Board could "ignore" the recommendation. *Id*. George indicated his assent. *Id*.

The sentencing court then stated that the plea agreement was limited to the 15-to-30-year sentence on the murder charge, concurrent with the sentences on the lesser included offenses from the same incident, but it would recommend concurrency with George's parole violations. Guilty Plea Colloquy at 14. However, any issue regarding George's parole violation or back time was "not part of the plea agreement." *Id.* at 14-15. George's counsel responded "Right." *Id.* at 15. The sentencing court twice repeated that even though it would recommend concurrency, this was "not a condition of the plea agreement." *Id.* George again indicated that he understood. *Id.* at 15-16. Near the end of the colloquy, the sentencing court reiterated that on the parole violation and back time issue, its agreement to recommend concurrency "seems to me to comply not with the plea agreement but with what our discussion was." *Id.* at 27. Thereafter, the sentencing court restated that the agreement was limited to sentencing on the 2002 offenses and George stated that he understood. *Id.* at 27-29.

George relies on *Oakman*, which states that mandamus is available if the Department fails to give credit as instructed by a sentencing court's order. 893 A.2d at 837. George also relies on *Commonwealth v. Andrews* (Pa. Super., No. 3452 EDA 2019, filed Dec. 18, 2020), 2020 WL 7419534 (unreported),[8] where the Superior Court, citing *Zuber* and *Martinez*, determined that the record supported the defendant's claim that his plea agreement expressly included that his back time would run concurrently with his new sentence; although the agreement "was one which the law did not permit," it was enforceable. *Id.*, slip op. at 2 & 6-9, 2020 WL 7419534, at **1-4. George also relies on *Commonwealth v. Gillins* (Pa. Super. No. 1145 EDA 2019, filed Dec. 24, 2020), 2020 WL 7663839 (unreported), where the

---

[8] Unpublished memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for persuasive value. Pa.R.A.P. 126(b); 210 Pa. Code § 65.37(B).

Superior Court remanded for appointment of PCRA counsel and reconsideration of the defendant's claims where the record supported the defendant's assertion, which the Commonwealth conceded had arguable merit, that his plea agreement stated that his new state sentence would run concurrently to a federal sentence he was already serving, even though no legal authority existed for such an arrangement. *Id*., slip op. at 1 & 11-12, 2020 WL 7663839, at *1, *5.

The Department responds that its calculations are correct, that George has not established a right to mandamus relief directing that his sentence on the 2002 offenses should run concurrently with his parole violation or back time, and that this issue was previously litigated and found meritless by the Superior Court in *George III*. Dep't Br. at 10-17.

As noted, the record before us does not include a copy of the sentencing court's written order, which the docket indicated was filed on the colloquy date of August 27, 2007. Ex. B to Answer & New Matter at 9. Nevertheless, the guilty plea colloquy transcript, as quoted above, does not reflect that the prosecutor and sentencing court ever agreed with George's counsel's request that George's sentence for the 2002 offenses would run concurrently with any prior time due.[9] In fact, the sentencing court stated three times that it would recommend concurrency but would do so only separately from the plea agreement for the 2002 offenses. *See* Guilty Plea Colloquy at 14-15 & 27. As such, George cannot establish that his plea agreement included an agreed-upon and court-ordered concurrency arrangement that

_____

[9] At the guilty plea colloquy, George's counsel did not even ask for back time to run concurrently with the new sentence. At that time, the only additional time of record was the one-year sentence for George's technical parole violation, which was issued in February 2005. Ex. E to Answer & New Matter.

15

could be enforced even if it did not comply with the relevant statutory provision directing that such sentences must be served consecutively.

We acknowledge that in *Zuber*, our Supreme Court determined that the sentencing court's promise to recommend concurrency created a "natural and obvious underlying inference that the Parole Board had, at the least, the [o]ption to accept or reject such a request" and "thereby became an integral part of the bargain" made by the defendant. *Id*. at 445. However, in *Zuber*, the prosecutor's "specific promise" in open court that he would recommend concurrency was expressly adopted by the sentencing court and became part of the agreement. *Id*. at 443. Here, the prosecutor made clear that the agreement pertained only to George's new sentence and the sentencing court made equally clear that its recommendation to the Parole Board regarding concurrency was not part of the plea agreement. In the absence of record evidence that the prosecutor and sentencing court agreed to concurrency, George has not established that such an arrangement, which is contrary to the relevant statutory provision, is enforceable under *Zuber* or, by extension, *Martinez*. This also negates George's reliance on *Oakman*, *Andrews*, and *Gillins*, where record evidence supported the defendants' allegations that their plea agreements and sentencing orders included a concurrency arrangement concerning their "other" sentences.

Given the lack of evidence that the prosecutor and sentencing court agreed to a concurrency arrangement as part of George's plea, the sentencing court's statement that George's new sentence would be effective as of the August 27, 2007, colloquy date cannot be read as tacitly encompassing or directing that George's pending parole violation and back time sentences would run concurrently with his new sentence. Rather, the sentencing court's announcement reflected that with

16

George's August 27, 2007, guilty plea and conviction, he was officially returned to Department custody to begin serving his parole violation and back time sentences on his 1995 convictions, as indicated on the October 2007 DC16E sentence status summary form issued by the Department. Ex. A to Answer & New Matter at 2 (indicating August 27, 2007, as the date of George's return to custody for parole violation purposes regarding the 1995 convictions).

Relatedly, although the DC-300B form for George's 2002 offenses, which he appended to his mandamus petition, states that August 27, 2007, is the effective date of George's sentence for the 2002 offenses, that form "does not constitute part of the trial court's sentencing order; rather, it is simply a document generated by the Common Pleas Criminal Court Case Management System that must be provided to the [Department] upon the commitment of an inmate." *Gibbs v. Pa. Parole Bd.* (Pa. Cmwlth., No. 308 C.D. 2023, filed Apr. 18, 2024), slip op. at 18, 2024 WL 1673347, at *8 (citing 42 Pa.C.S. § 9764(a)) (unreported). As in *Gibbs*, George has not "provided authority or any other basis to conclude that the DC-300B form associated with an original sentence provides or commemorates any rights or privileges on its own, much less may serve as the basis for leniency or credit in a future parole revocation matter." *Id*., slip op. at 18, 2024 WL 1673347, at *8. Moreover, the DC-300B form has a space to indicate whether sentences are concurrent, and the only reference here to concurrency reflects the sentencing court's direction, which it stated at the colloquy, that the lesser included offenses from the 2002 offenses will run concurrently with the 15 to 30 years on George's third-degree murder conviction. Ex. D to Mandamus Petition; Guilty Plea Colloquy at 8 & 14.

Once August 27, 2007, was formally established as George's the date of his return to custody, he could begin serving his parole violation and back time

for the 1995 convictions, which pursuant to settled law, would run before his sentence for the 2002 offenses could begin. *See Palmer*, 134 A.3d at 165. The DC-16E form for the 2002 offenses shows that the Department began with the maximum date of December 8, 2015, for the parole violation and back time due on the 1995 conviction, then derived the July 21, 2013, "effective date" for George to begin his sentence on the 2002 offenses by awarding George pre-sentence credit time from the April 2005 criminal complaint on the 2002 offenses through his August 2007 plea and subtracting that figure from December 8, 2015. Although George challenges the Department's "failure" to run his parole violation and back time to the sentence for his 2002 offenses, he does not challenge the Department's calculations that resulted in the actual effective date of his latter sentence.

Given the foregoing discussion, George has not established on the record here that even though the sentencing court ordered his new sentence to be effective as of the August 27, 2007, colloquy, the sentencing court clearly and unambiguously intended that the back time due on his prior sentence was to run concurrently to his new sentence. *See Oakman*, 893 A.2d at 837. That intent would have to be clear because the statutory scheme and relevant precedent preclude concurrency of back time on a prior conviction with a new sentence. *See Duncan*, 137 A.3d at 576; *Palmer*, 134 A.3d at 165.

Even if the record here suggested a lack of clarity in the sentencing court's intent when it ordered George's sentence in 2007, the sentencing court made its position clear in the post-conviction litigation that resulted in *George III*. There, the sentencing court held a remand hearing on this very question at which George testified and briefs were submitted, after which the sentencing court expressly held that running George's "back time" on the old sentence concurrently with his new

18

sentence was not a term of his plea agreement. *George III*, slip op. at 3, 2020 WL 1656148, at *2. The Superior Court agreed:

> [George] was informed multiple times during that hearing that the parole board could ignore the sentencing court's request to run the parole back time concurrently with the sentence it was imposing on Appellant's guilty plea. The sentencing court also unambiguously stated that the only term of the plea agreement was that [George] would receive a sentence of fifteen to thirty years of imprisonment at the third-degree murder charge and that the other sentences imposed at this case would run concurrent to the murder charge. Finally, the [sentencing] court explicitly reminded [George] that the parole back time issue was not a part of the plea agreement and that, while the [sentencing] court could request that his sentence be run concurrent with the parole back time, it could not guarantee that result. Throughout, [George] repeatedly indicated that he understood the terms of his plea agreement and agreed to be bound by them.
>
> . . . .
>
> Since [George] has failed to persuade us that he did not receive the full benefit of the bargain to which he was entitled, we affirm the lower court's denial of his motion to modify sentence.

*Id.*, slip op. at 7-9, 2020 WL 1656148, at *3-4. As noted, "the critical query in a mandamus action is what did the sentencing court actually intend." *Allen*, 103 A.3d at 371. There is simply no indication in either past litigation or the record here that the sentencing court intended George's back time on his prior sentence to run concurrently with his new sentence. In fact, it is clear that the sentencing court did not intend such a result and George's arguments are meritless. As such, he has not established a legal right to the relief he seeks or a Department duty to provide that relief, which are necessary for mandamus. *Cooper*, 363 A.2d at 815. Nor has he

shown that genuine issues of material fact remain or that his right to judgment is clear as a matter of law, which are necessary for the summary relief he seeks in the instant matter. *See Eleven Eleven*, 169 A.3d at 145.

## IV. Conclusion

In light of the foregoing, George's application for summary relief is denied.

_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kareem George, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Corrections, | : | |
| Records Supervisor, Kathleen | : | |
| Witmer, SCI Rockview, | : | |
| Superintendent, Bobi Jo Solomon, | : | No. 409 M.D. 2021 |
| Respondents | : | |

# **O R D E R**

AND NOW, this 16th day of March, 2026, the Application for Summary Relief filed in this Court's original jurisdiction by Petitioner Kareem George on August 20, 2025, is DENIED. The Petition for Writ of Mandamus filed in this Court's original jurisdiction by Petitioner Kareem George on November 8, 2021, is also DENIED.

_____
CHRISTINE FIZZANO CANNON, Judge